### IN THE

# SUPREME COURT OF TENNESSEE,

### FOR THE

# EASTERN DIVISION.

KNOXVILLE, . . . . . . . SEPTEMBER TERM, 1882.

WILLIAM G. HUME *et al. v.* COMMERCIAL BANK *et al.*

JUDGE, INCOMPETENCY. *Relationship.* A judge is not incompetent, under the constitution and laws of this State, to sit in a cause in which the husband of his wife's sister is a party.

### FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

CORNICK & CORNICK for complainant.

JAMES COMFORT for Trustee.

INGERSOLL & COOKE for Tillman, Administrator.

GEORGE ANDREWS and W. M. BAXTER for Ross and Boynton.

1—VOL. 10.

GEORGE BROWN and GEORGE WHITE for Henegar.

COOPER, J., delivered the opinion of the court.

In this case, the creditors of the Commercial Bank and James Comfort, the trustee, under the general assignment of the bank, have filed separate petitions for a re-hearing. The petition of the creditors is rested entirely, and the petition of the trustee principally on the fact that one of the judges of this Court, who participated in the hearing and decision, was incompetent to sit in the cause by reason of relationship to one of the creditors of the bank.

The constitution of 1870 upon this subject is: "No judge of the Supreme Court shall preside on the trial of any cause where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, except by consent of all the parties": Const., art. 6, sec. 11. The statute is: "No judge of any court shall sit in any cause where he is related to either party by consanguinity or affinity within the sixth degree computing by the civil law, except by consent of the parties entered of record, or put in writing if the court is not a court of record": Code, sec. 4098.

The fact, upon which the petitions for rehearing are based, is that the judge of this Court and the creditor mentioned married sisters who are still living. The two are, therefore, not related by consanguinity. Are they related by affinity?

Affinity, as distinguished from consanguinity, signifies the relation which each party to a marriage, the

husband and the wife, bears to the kindred or blood relations of the other. The marriage having made them one person, the blood relations of each are held as related by affinity in the same degree to the one spouse as by consanguinity to the other: Bac. Abr. Marriage A.; Bouv. Law Dict. Affinity; Enc. Brit. *voce* Affinity. "*Affines sunt viri et uxoris cognati*": Dig. 38, 10, 4; Just. Inst., 1, 10, 6.. The relationship by affinity does not extend further, and hence the maxim "*affinis mei affinis non est mihi affinis*"—a person related by affinity to one who is related to me by affinity is not related to me by affinity. It is therefore said by the civilians that if a brother and sister marry two persons not related, and the brother and sister die, the widow and widower may intermarry; for though a man is related to his wife's brother by affinity, he is not so to his wife's brother's wife: Taylor Civil Law, 339, cited in 1 Bish. on Mar. & Div., sec. 314, and in Chitty's note to 1 Black., 435. It must be equally true that although a man is related to his wife's sister by affinity, he is not so to wife's sister's husband. And so it has been held: *Poydras* v. *Livingston*, 5 Mart., 293. The same result follows necessarily from the fact that the degrees of affinity are computed by the civil law in the same way as those of consanguinity. The degree of relation by consanguinity of a husband or wife to a third person is computed by counting up to the common ancestor, and down to the related ·party: *Kyle* v. *Moore*, 3 Sneed, 184. The degree of relation by affinity of the other spouse is found by counting up

to the common ancestor and counting down. The husband of a wife's sister could not possibly fall within the line of computation. Our statute, it will be remembered, limits the incompetency of a judge either by consanguinity or affinity to the sixth degree computing by the civil law.

The question is not a new one in this State. The constitution of 1796 provided art. 5, sec. 8 : "No judge shall sit on the trial of any cause where the parties shall be connected with him by affinity or consanguinity, except by consent of parties." In *Waterhouse* v. *Martin,* Peck, 374, a question arose as to the competency of two of the three judges then composing the Supreme Court of Errors and Appeals by reason of their supposed relation to one of the parties. Judge Whyte was married to the sister of defendant Martin's mother, and Judge Haywood's son had married the sister of Martin's mother. The first point which came before the court was whether the question of competency should be determined by the court, or by the judge himself. Judge Whyte was of opinion that the judge must decide for himself the question of his own competency. The other two judges, Haywood and Peck, held that the question was for the court. All of them agreed that Judge Whyte was incompetent, because his wife was related by consanguinity to the defendant Martin through his mother's father, and Judge Whyte stood to him in the same relation by affinity. And the court held that Judge Haywood was not incompetent, because the relationship of the wife's blood kin by affinity to the husband did not extend

to the blood kin of the husband, upon the principle of the maxim above cited. The relationship actually existing was what the civilians call *affinitas affinitatis*, a connection existing in consequence of marriage which is neither consanguinity nor affinity. Such a relation- ship, it was expressly held, would not render a judge incompetent under the constitution. The same conclu- sion was reached in the construction of a similar stat- utory provision, making a juror incompetent when either of the parties is connected with him by affinity or consanguinity within the sixth degree, computing by the civil law, except by consent of parties. It was held in a case in which a prisoner was convicted of mur- der, and sentenced to be executed, that a juror was not rendered incompetent by the fact that the sons of his wife by a former husband were the second cousins of the murdered man: *Moses* v. *State,* 11 Hum. 232. The statutes, both in the case of judges and jurors, require the disqualifying relationship to be ascertained by computing according to the civil law, that is by counting from one party up to the common ancestor and then down to the other.

It is impossible to apply the rule in the case before us, unless we treat husband and wife as one person, and that person the wife, instead of the husband as the law requires when the common law fiction of the unity of the two is resorted to for any purpose. The objection of incompetency is clearly not well taken.

In practice, the precedent set by Judge Whyte in *Waterhouse* v. *Martin,* has usually been followed by this court. The judge, whose competency has been

called in question, has been allowed to decide for himself the question of his competency, the parties to the cause acquiescing in his action. As a result, a judge has sometimes declined to sit from motives of delicacy, when not in fact incompetent by law. Whether as a court we would not consider ourselves bound by the decision in *Waterhouse* v. *Martin,* if the point were squarely raised by the parties, we need not stop to enquire. The fact that the particular creditor in this case was in any way connected with the result of the litigation was not known to any member of the court. His name does not appear as one of the complainants in the creditors bill, nor in the record except in the schedule of claims against the bank in the master's report. He came in by petition, and did not appeal from the decree below. It is doubtful, therefore, whether he can be considered as a party to the suit in this court, although, it may be, interested in the result. Such an interest would not render a judge incompetent: *Matter of Dodge,* 77 N. Y., 101. Be this as it may, the connection, *affinitas affinitatis,* between him and one of the judges was well known to most of the complainants and their counsel, although the fact doubtless escaped the recollection at the moment, and yet no suggestion on the subject was made, nor objection on that ground raised. Under these circumstances, whatever may have been the judge's action in other cases to which the particular creditor was a party, and whatever might have been his course in this case if advised of the facts, the question as now presented is considered by the court as one of strict

Hume *v.* Bank.

law.    There is the less reluctance in coming to this conclusion as his opinion was adverse to the creditor. The case was fully heard and carefully investigated, not merely on account of the magnitude of the interests involved, but because it raised novel questions on which lawyers and judges might well differ, as the members of the court did.    All the judges being in law competent, the petitions for a rehearing, so far as they rest upon the supposed ground of the incompetency of one of them, necessarily fails.

One of the petitions relies on no other ground. The other petition merely objects to the conclusions reached by the majority of the court, without stating that any material fact in the record bearing upon them was overlooked, or presenting any new argument.    No sufficient reason is shown for a rehearing, and the applications must be refused:  *Andrews* v. *Crenshaw*, 4 Heis., 152;  *Holmes* v. *Eason*, 8 Lea, 762.

Petitions dismissed with costs.