Smith *v.* Gaines.

1. In the case we are considering, judgment has not been entered.

2. The court were evenly divided, and the decision could only be reached by the form in which the question was put.

3. An application for a rehearing was made on the spot, and the record was ordered to be retained, " to the end that the counsel for the appellant might have an opportunity to make a motion for a re-argument of the case," viz.: " It is ordered on this 10th day of July, A. D. 1882, that the record in the above-stated cause be retained by the clerk of this court until further ordered, to the end that the counsel for the appellant may have an opportunity to make a motion for a re-argument of the cause."

4. The case below was heard by a master.  This court heard it in the absence of five judges.  Five were for reversal, five for affirmance and five did not vote.  The result is, that the law in reference to the application of the canon, as laid down by the master, will be made the law of this state by three law judges and two lay judges of the court of errors.

*Mr. Woodbury D. Holt* and *Mr. Mercer Beasley, Jr.,* for respondent.

On motion of GREEN, J., a re-argument before the full bench was ordered.

SMITH et al., executors, appellants,

*v.*

GAINES et al., respondents.

By the sixth clause of the statute of descents, a great-uncle of an intestate is of equal degree of consanguinity with a cousin of such intestate.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Smith* v. *Gaines, 8 Stew. Eq. 65.*

*Mr. B. Williamson,* for appellants.

*Mr. H. C. Pitney,* for respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

The question before this court relates to the descent of lands in this state by force of the sixth section of the statute regulating descents of lands.   *Rev. p. 298.*

The controversy originated in the court of chancery on a bill filed for partition, and in that proceeding his Honor Vice-Chancellor Van Fleet decided that the complainant, who is a great-uncle of the intestate, was equally entitled to the land with the defendant, who was a cousin of such intestate. This distribution of the title was the only point in litigation, and is the only question this court is called upon to adjudge.

In the cases of *Taylor* v. *Bray, 3 Vr. 182,* and *Schenck* v. *Vail, 9 C. E. Gr. 538,* it was conclusively settled as the law of this state, that in ascertaining the persons who should stand as next of kin, and to whom the lands of intestates should go by force of the statutory provision alluded to, the rule of computation of the degree of consanguinity should be the canon of the civil and not that of the common law.   The consequence is, that if such rule, in its purity, is to be applied in this case, there can be no doubt as to the correctness of the decision rendered in the court below, for, by the test of that rule, it cannot be denied that these parties are related to the decedent in the same degree of kindred.

But it is insisted, in behalf of the defendant, that this rule of computation is not to be applied irrespectively of the canons of the common law, but is subject to qualification by them. And in turning this theory to account, it is contended that to make the first common ancestor the *terminus a quo* is imperative

NOTE.—For cases showing the application of the rules of descent, see *Bailey* v. *Ross, 5 Stew. Eq. 544, note;* also *Hoffman* v. *Bacon, 50 Ind. 379;* *Bruce* v. *Baker, Wils. (Ind.) 462;* *Wetter* v. *Habersham, 60 Ga. 193;* *Van Sickle* v. *Gibson, 40 Mich. 170;* *Pond* v. *Bergh, 10 Paige 140;* *Pitchard* v. *Turner, 2 Hawks 435;* *Caldwell* v. *Black, 5 Ired. 463;* *Afflick's Case, 3 McArth. 95;* *Oliver* v. *Vance, 34 Ark. 564.*—REP.

at common law, and therefore the grandfather, in the present genealogy, cannot be passed and the line carried back to bring in the complainant through the great-grandfather. But the reason why, at the common law, the issue of the nearest lineal ancestor was preferred over the issue of one more remote, was · that by the rule of computation of that system the former were nearer of kin than the latter.

This result was occasioned by the doctrine of representation. Blackstone says: " The issue of descendants, therefore, of John Stile's brother are all of them in the first degree of kindred with respect to inheritance, those of the uncle in the second, and those of the great-uncle in the third, as their respective ancestors, if living, would have been, and are severally called to the succession in right of such their representative proximity." But when the doctrine of the representation of the ancestor by his descendants, no matter how far removed, has been abolished, why should the doctrine founded on it, that the collateral kindred claiming through the nearest ancestor should be preferred to collaterals claiming through a common ancestor more remote, be retained ? Such retention would have no tendency, as is supposed in the brief of the counsel for the appellant, to give the inheritance to those who have in their veins more of the blood of the ancestry of the intestate. It is certain that in the present case these two contestants have the ancestral blood of the intestate in the same proportion; that is to say, such blood has been affected by two divisions in descending through each line respectively. This complainant and this defendant completely fulfill the description of the statutory clause in question, for they are " of equal degree of consanguinity " with the decedent. It is true that in the case of Taylor v. Bray, 3 Vr. 182, it was held that running parallel with this tenth clause of this statute regulating descents, and in a measure modifying it, the canon of the common law which forbade the lineal ascent of the inheritance, still existed in our system of law, but such result was reached from what were deemed clear indications apparent in the general legislative plan with respect to descents. But no such implications are perceived which tend to sustain or favor the view that this other canon of the common law has been designedly retained ;

indeed, every reasonable consideration and inference seem to wear an aspect adverse to such a theory. To admit such a doctrine would introduce much confusion in the entire subject. The vice-chancellor has very clearly stated the legal rule applicable in this instance, and the decree advised by him should be affirmed.

PATERSON, J. (dissenting).

After examining this matter with more than ordinary interest and care, particularly since ascertaining that I disagreed in opinion with my associates, I propose at this time to express briefly the reasons of this dissent.

The single question to be determined here is whether, under the facts and circumstances of the case, a first cousin is entitled to the whole of the premises for which this suit in partition is brought, or must share the land equally with a granduncle. This determination depends solely upon the construction of so much of the sixth section of the statute as is enacted in these words, " and shall leave several persons of equal degree of consanguinity to the person so seized, however remote from such person the common degree of consanguinity may be." No doubt has been suggested on the argument of the application of the statute to one survivor.

Consanguinity, in the original Latin signification of the word, implies nearness of blood. Evidently the term is intended to be used in this section of the law in such a sense. The construction should fulfill the purpose. I fail to discover how any arbitrary artificial rule, as applied here, can answer the clear legislative design.

Edward Ennis Graham No. 3 was the person last seized, and who took all of the estate. He was an only child, an infant of the age of six years at the time of his death. He left no father. No claimant appears in this line. Passing his father in the ascending degree, his grandfather is reached. This grandfather, also deceased, from the facts stated in the record, is an ancestor common to such person last seized and to the appellant. In this case the common degree of consanguinity referred to in the statute can be no more remote than this common ancestor thus

found. ·Now this common ancestor, it is plain, must have been and was nearest in blood to Edward Ennis Graham No. 3.

Robert L. Graham is found to be in this line, and Edward Ennis Graham No. 1 is not. He is a missing link. This should be conclusive, and really is all there is in the case. The matter is determined, the statute is fulfilled, the common ancestor, who here is the one most remote from the person last seized, has been found, and the collateral nearest in blood is ascertained. The grandfather is such common ancestor, the first cousin is such nearest collateral, and no person who was living at the death of the *propositus* can be discovered in that line of equal degree of consanguinity with him.

Nor can this conclusion be avoided or defeated by excluding the right of representation, because the grandfather is one degree nearer to the person last seized, or consanguinity must have a signification other than proximity of blood. The application of a general rule, without regard to a fact so self-evident as this, may produce a result like that proposed to be declared here, but such result can be only strained and forced. It does not, for the simple reason that it cannot, ignore this substantive fact. The significance of such fact cannot be evaded. No *stare decisis* is of any avail in determining consanguinity in this case. Two common ancestors cannot be the nearest in blood. One must be a remove from the other. The collateral consanguinity contemplated by the statute can be no other than nearness of blood. The common blood of the father is nearer by one degree than that of the grandfather and granduncle, the same as the grandfather is nearer than the great-grandfather. Turn any way, and there is no escape from this conclusion. The wisdom of the civilians may be invoked to change or conceal the fact, but that remains still.

In *Schenck* v. *Vail, 9 C. E. Gr. 538,* the decision was right, as I understand, not because it was the result of the application of the rule of the civil law, but for the reason that the plain intention of the statute was carried out. Here it is wrong for a reason directly the opposite. To seek for a common ancestor beyond and behind, and farther removed than the first one found, is to create a rule

of construction superior and antagonistical to the statute. That neither adopts nor sanctions, prohibits nor rejects any particular method. The crucial test is nearness of blood, and any rule which defeats that, clearly is artificial and constrained in character. A first cousin is nearer in consanguinity than one of the next remove, and also than a granduncle, for just the same plain, perspicuous and pertinent reason, namely, one degree of proximity. The suggestion in the brief for the appellant, that it never has been hinted or implied in the decisions of any court in New Jersey, that a granduncle inherits with a first cousin, is striking and strong. In connection with it, I venture to say that the number of those who believe the law of the state is, or should be such in that respect, will be found to be as small in comparison as that of those who prefer the currency of a banking corporation to that of the United States.

Agreeing with the opinion in *Schenck* v. *Vail,* that legislative intent should govern the construction of the statute, I ask now if the rule of the canon or common law was to be overthrown there, when not in harmony with the new scheme, why should not the rule of the civil law go down here under similar circumstances? Adopting the phraseology of that opinion, I think the application of the latter rule in this case must frustrate the paramount idea of proximity of blood; here that rule becomes artificial, and will defeat the order of nature prescribed by the statute. As that stands, each case must be a law unto itself, as it may come up for determination, under any rule which produces a result in harmony therewith, whether of the canon, civil or common law, or of neither. Here, while the result follows the application of the rule of common law, it has the merit also of being in unison with common sense and common opinion. I must regard the decision in *Schenck* v. *Vail* as settling only the principle of that case, or any other that may arise analogous thereto; it should not be recognized in this, because it does not fit the circumstances. Being satisfied most fully that Edward Ennis Graham No. 3 left no relative of equal degree of consanguinity with his cousin, the appellant, my opinion is that Robert L. Graham is entitled to the whole, not simply half the

Smith *v.* Gaines.

cob of the premises in controversy, and the decision below should be reversed. When an ancestor common to the person last seized, and any relative collateral to the intestate is reached, it would seem axiomatic that a relative not found in such line cannot be equal in proximity of blood to one appearing therein.

This view is sustained by the remarks in a collection of "The Institutions of the Law of Scotland," by Sir George McKenzie, in 1706. It is laid down there on page 166, that, failing descendants, the succession ascends, first to the father, here Edward Ennis Graham No. 2, then to the brother of the father, in this case C. Montrose Graham, failing him and brothers and sisters, next to the grandfather, here Charles M. Graham, and, after him, to his brothers and sisters according to the propinquity of blood, and so upwards as long as any propinquity can be proven. The same idea is to be found expressed in " Rutherforth's Institutes," vol. II. p. 420, where it is said, " In determining which is the next line, we are to go back, not to any remote ancestor, but only to the next immediate ancestor, from whom the line that is extinct, and some other line not extinct, were derived." He illustrates his position by a diagram very similar to one of those in the brief of the appellant. While I do not refer to either of these volumes as an authority analogous wholly to the principle of the present case, still they are pertinent to establish the fact that the writers regarded the blood of a grandfather as nearer in propinquity than that of a great-grandfather. It must follow that those who claim under the great-grandparent cannot be of equal degree of consanguinity with those who claim through the grandparent. Therefore, Edward Ennis Graham No. 1 was not entitled to succeed to the inheritance of the premises with Robert L. Graham.

For affirmance—THE CHIEF-JUSTICE, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, CLEMENT, COLE, GREEN, KIRK, WHITAKER—12.

For reversal—PATERSON—1.