41 N.J. Super. 530 (1956)
125 A.2d 539
EVELYN S. WILSON AND HARVEY A. WILSON, PLAINTIFFS-RESPONDENTS,
v.
GREENACRES COUNTRY CLUB AND GREENACRES HOLDING COMPANY, CORPORATIONS OF N.J., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1956.
Decided September 28, 1956.
*532 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Kenneth J. Dawes argued the cause for defendants-appellants (Messrs. Dawes & Dawes, attorneys).
Mr. Nathan N. Schildkraut argued the cause for plaintiffs-respondents (Messrs. Kahn & Schildkraut, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal by defendants from a judgment for $4,000 in favor of the female plaintiff and for $657 in favor of her husband, in an action for personal injuries and consequential damages ensuing as a result of a fall caused by defendants' alleged negligence in maintaining a clubhouse. The action was instituted in the Superior Court, Mercer County, but was transferred for trial to the Mercer County District Court on grounds of probable non-excess of the recovery over the jurisdiction *533 of the county district court, as permitted by the statute. The case was tried without a jury.
Mrs. Wilson and her husband were members of the defendant country club, and the theory of her case is that she fell on June 18, 1953, when her spiked golf shoe caught in a torn carpet runner in the locker room of the club, improperly maintained by defendants, causing her to fall forward heavily on her hands and producing injuries to her arms and elbows. The extent of her injuries was seriously contested at the trial.

I.
The first ground of appeal is that the trial judge was, unknown to defendants, disqualified to hear the case because of a relationship to plaintiffs within the prohibited degree specified by N.J.S. 2A:15-49. The statute provides that no judge shall sit when he "is related in the third degree to any of the parties to the action, which degree shall be computed as at common law."
Clarity in the factual exposition requires naming the persons in the chain of relationship. A sister of the wife of Judge Vine, who presided at the trial, is Mrs. Sarah Sachs. She was previously married to Benjamin Wilson, deceased some time ago, and thereafter she remarried. The plaintiffs are daughter-in-law and son, respectively, of Isadore Wilson, brother of Benjamin.
A motion for a new trial by defendants raised, inter alia, this question of disqualification, but it was denied by the trial judge on the grounds that his relationship to plaintiffs was not within the prohibition of the statute and that the objection was required to have been raised prior to trial, under N.J.S. 2A:15-50.
The first facet of the inquiry is whether the statute contemplates relationship by marriage as well as by blood. A consideration suggestive of a negative response is the statutory requirement that the degrees of kinship be "computed as at common law." At common law that computation was only in degrees of consanguineal connection. In *534 both the common and canon law, the degrees of lineal consanguinity are reckoned as one degree for each person in the line of descent, exclusive of him from whom the computation begins. The degrees between collaterals are found by taking the number from the common ancestor to either or to the more remote of them. 4 Kent's Commentaries (14th ed. 1896), [*]413 [474]; "consanguinity," Webster's New International Dictionary (2d ed.), p. 567; Vol. I, Bouvier's Law Dictionary (Rawle's Third Revision 1914), p. 818; Black's Law Dictionary (4th ed. 1951), p. 511. By the civil law the computation was upward to the common ancestor and then downward to the other party, counting the degrees ascending and descending. Smith v. Gaines, 35 N.J. Eq. 65 (Ch. 1882), affirmed 36 N.J. Eq. 297 (E. & A. 1882); Schenck v. Vail, 24 N.J. Eq. 538 (E. & A. 1873). Thus, there being no evidence of strict recognition at common law of degrees of relationship to the kin of a spouse, the statute under consideration may seem not intended to disqualify for relationship by affinity, i.e., by blood relation to one's spouse. Yet the strong public policy for impartial administration of justice implicit in the statute suggests a broader inquiry as to the scope of the legislative intent. "The ties of affinity are often stronger than those between collateral or even lineal kinsmen by blood." Bennett v. Van Riper, 47 N.J. Eq. 563, 566 (E. & A. 1890).
There is a wide scattering of authority recognizing relationship by affinity as effective for many legal purposes. 2 C.J.S., Affinity, page 991; Bennett v. Van Riper, supra; Graham v. Thompson, 174 Tenn. 278, 125 S.W.2d 133 (Sup. Ct. 1939); State v. Hooper, 140 Kan. 481, 37 P.2d 52 (Sup. Ct. 1934); Sizemore v. Commonwealth, 210 Ky. 637, 276 S.W. 524 (Ct. of App. 1925); Wimberly v. King, 179 So. 515 (Ct. of App. La. 1938); Marcus v. Leake, 4 Neb. Unof. 354, 94 N.W. 100 (Sup. Ct. 1903); O'Connell v. Powers, 291 Mass. 153, 197 N.E. 162 (Sup. Jud. Ct. 1935). A dictum in Vannoy v. Givens, 23 N.J.L. 201, 202 (Sup. Ct. 1851), regards affinity as ground for disqualification *535 of a judge. At the time of rendition of the Vannoy opinion a precursor of the present statute, of identical verbiage, was in effect. Act of February 24, 1820 (R.S. 992), Nixon's Digest Laws of N.J. 1709-1868 (4th ed.), p. 441. But the opinion questionably assumes affinity where the plaintiff's wife is a sister of the wife of the judge (see infra).
Where relationship by affinity is held to be applicable, degrees of relationship are computed, by analogy, in the same manner as at common law, to the spouse of the subject, the bridging marriage not counting as one step because of the canonical maxim that marriage makes the husband and wife one. State v. Hooper, supra (37 P.2d, at page 64). It is thus apparent that we would not be taking excessive liberties with the statute if we read it to contemplate disqualification of the blood relatives of the wife of a judge. Indeed it would be a matter of dismay if the statute were required to be construed, for example, to permit a judge to sit in a matter concerning his wife's brother. Assuming, then, that the statutory bar extends to affinity, is there affinity here? We think not.
The relational bridge between the judge and these plaintiffs is built not only upon the judge's marriage but upon that of his wife's sister, and, in the case of the female plaintiff, her marriage as well. The decided weight of authority is that a husband is not related by affinity to his wife's affines but only to her blood relatives. 2 C.J.S., Affinity, page 991; 1 Bouvier's Law Dictionary, op. cit., supra, pages 159, 160. For example, a husband is not related by affinity to the wife of his wife's brother, although he is to the brother. Chinn v. State, 47 Ohio St. 575, 26 N.E. 986, 11 L.R.A. 630 (Sup. Ct. 1890). The dictum in the Vannoy case, supra, is not soundly grounded.
"`The groom and bride each comes within The circle of the other's kin; But kin and kin are still no more Related than they were before.'"
Harvey, J., in State v. Hooper, supra, 37 P.2d, at page 64
*536 The jingle illustrates the incapacity of the Benjamin Wilson marriage in the present case to relate by affinity even Mrs. Vine and Isadore Wilson, much less Judge Vine and the plaintiffs. The argument founded upon alleged disqualification thus falls, even upon a reasonably liberal construction of the statute. Defendants do not assert that, aside from the statute, the trial judge was otherwise biased or improperly interested. This conclusion leaves it unnecessary to consider the effect of the death of Benjamin Wilson or the timeliness of the objection.

II.
There was no fairly debatable factual issue developed at the trial concerning the improper condition of maintenance of the carpet runners in the locker room at the defendant club or as to Mrs. Wilson's fall as a proximate result thereof. Plaintiff's case as to the condition of the runners was corroborated even by defendants' witness, Katherine Kulakov, attendant in the clubhouse. We conclude, therefore, that asserted errors by the trial judge in allowing in evidence photographs encompassing areas beyond where plaintiff fell and as to subsequent repair of the runners were not prejudicial, if erroneous.
We find, however, a serious misapprehension by the trial judge of the evidence concerning the extent of the injury to and disability of Mrs. Wilson's right arm and elbow. Dr. Bernstein testified for plaintiff that she had "ten degrees of extreme supination lacking" in her right arm. Supination is the rotation of the hand and arm so that the palm is turned up. It involves 180 degrees of rotation. Pronation is the reverse. Dr. Bernstein found pronation, flexion and extension of that arm normal. He found no hyperextension of the elbow, but the incidence of hyperextension varies in people naturally, and there was no evidence she had hyperextension prior to the accident. He summarized her right arm restriction: "there is a limitation of motion and slight weakness." Apparently based *537 upon the "ten degree" supination loss thus referred to, the trial judge interrupted the summation of defendants' counsel to ask whether Dr. Bernstein had not testified that plaintiff had "what we would say a ten percent disability in a workmen's compensation case." Counsel answered in the negative and explained. Nevertheless, thereafter, in colloquy with counsel just before the conclusion of the case, the court stated that, "my conclusion from his [Dr. Bernstein] testimony was that there was a ten percent disability."
We think the plain manifestation by the judge of his misconception of the testimony in this regard is sufficiently prejudicial as to require reversal. To what extent the error influenced the amount of the verdict we cannot know nor should we speculate. Neither Dr. Bernstein nor any other physician testified to a ten percent disability. The testimony of the physician who examined plaintiff for defendants on August 21, 1953 was that she then had "full motion of both elbows." While there was contrary medical proof for plaintiff, there remained a sharp issue of fact as to degree of disability. The obvious misinterpretation by the trial judge in a material respect of a portion of that proof necessarily impugns his estimate of plaintiff's damages, as translated into dollars by his verdict.
The judgment is reversed and the cause remanded for a new trial as to damages only.