Tegarden, Admr., *v.* Phillips.

Filed November 26, 1895.

No. 1,345.

## Tegarden, Admr., *v.* Phillips.

New Trial.—*Decedent's Estate.—Juror Related to Defendant by Affinity.—Want of Knowledge of Such Relationship by Heirs and Administrator.—Pleading.*—To entitle the administrator of a decedent's estate to a new trial for the false denial by a juror of his relationship to the adverse party within the degree which, under section 240, R. S. 1894, Subd. 11, in the absence of consent of the parties, disqualifies a person required to be indifferent in acting on a question affecting other parties, knowledge of such relationship on the part of the heirs who are the real parties in interest as well as that of the representative, must be negatived.

Jury.—*Relationship of Juror by Affinity to Party in Suit.—When Not Disqualified.*—An affinity relative of the wife of a party is not in consequence thereof an affinity relative of the party, within section 240, R. S. 1894, disqualifying a person required to be indifferent in acting on any question affecting other parties, if related to either party by consanguinity or affinity within the sixth degree inclusive by the civil law rules, or within the degree of second cousin inclusive.

Appellate Procedure.—*Presumption as to Decisions of Trial Court.*—All reasonable presumptions and intendments will be indulged by the appellate court in favor of the rulings and decisions of the trial court, upon appeal from a judgment of a court of general jurisdiction.

ASSIGNMENT OF ERRORS.—*Joint.*—A joint assignment of error in giving several specified instructions is bad if any one of the instructions is good.

From the Orange Circuit Court.

*W. H. Talbot, W. Farrell, H. H. Farrell* and *Blackledge & Thornton,* for appellant.

*T. B. Buskirk, J. H. Zaring* and *M. B. Hottel,* for appellee.

LOTZ, J.—The appellant George W. Tegarden, as administrator *de bonis non* of the estate of John Phillips, deceased, brought this action against the appellee Thomas L. Phillips to recover the sum of $3,000.00, alleged to be due and owing from the latter to the estate. After issue joined there was a trial by jury and a verdict returned for the appellee, upon which the court, after overruling appellant's motion for a new trial, rendered judgment.

The appellee was a son and heir at law of appellant's decedent.

The only error assigned is the overruling of the motion for a new trial.

One of the causes for a new trial was the alleged incompetency of one of the jurors, Thomas J. Grigsby.

It appears from the affidavits filed in support of this cause, that the juror, on his *voir dire,* was asked whether or not he was related by blood or marriage to either of the parties to the action, and that in answer to such question the juror stated that he was not. It is also made to appear that this juror's wife and the appellee's wife are related by consanguinity within the fifth degree, the juror's wife and the appellee's wife's mother having been first cousins. It is also shown by the affidavits of the appellant and his counsel, that they

Tegarden, Admr., v. Phillips.

had no knowledge of such relationship when the juror was accepted.

Counter affidavits of the juror Grigsby and other jurors were filed, by which it was made to appear that Grigsby was ignorant of the relationship at the time he was accepted and served on the jury, and that in the jury room he was the strongest partisan for the appellant, and that he was the last to consent to a verdict for the appellee. It was also shown by the undisputed evidence in the case that the appellant had made a final settlement of the estate and had been discharged as such; that he was afterward reappointed as administrator *de bonis non*, for the purpose of waging this suit. It was further shown by appellee's affidavit, that the suit was waged in the interest of the other heirs of the decedent, and that a recovery would inure to their benefit; that some of said heirs employed counsel to prosecute the action and that they were present at the trial and at the time the juror Grigsby made answer to the questions propounded to him touching his competency; that neither they nor their counsel made any objection to such juror at that time. Neither these heirs nor their counsel controverted the latter statements nor did they make any showing that they were ignorant of the relationship of the juror's wife and appellee's wife. In fact William Roach, who married a daughter of the decedent and who was present at the trial and counseled with appellant's attorneys, made an affidavit as to the relationship existing between the juror's wife and the appellee's wife; the relationship having come about through his first marriage.

When the judgment of a court of general jurisdiction is assailed on appeal, it is surrounded with strong presumptions in favor of its validity. All reasonable presumptions and intendments will be indulged in favor

of the rulings and decisions of the trial court. This rule is grounded in the elementary principle that official acts are presumed to have been rightfully performed. This presumption is redoubled in the case of a judgment, for a court acts impartially upon full information and after due consideration. The law rightfully casts the burden upon those who assail the judgment to make the error manifest. Elliott App. Proced., section 710, 711; *Louisville, etc., R. R. Co.* v. *Berry*, 9 Ind. App. 63.

An administrator, under our statute, is a mere trustee for the creditors and heirs of the intestate. *Rountree, Admx.,* v. *Pursell*, 11 Ind. App. 522.

Whilst it is true that actions are instituted by and against the estate in the name of the administrator, still the administrator is only a nominal party. The real parties in interest are his beneficiaries, or those for whom he acts.

One who, though not a party, prosecutes or defends an action by employing counsel and doing those things which are usually done by a party, is bound by the judgment rendered. *Montgomery* v. *Vickery*, 110 Ind. 211; *Burns* v. *Gavin*, 118 Ind. 320; *Shugart* v. *Miles*, 125 Ind. 445.

If the judgment rendered under such circumstances is binding upon the parties as an adjudication, then surely the acts and conduct of such parties during the progress of the trial will be binding upon them.

In the case at bar the presumption must be indulged that all was done that the law required to be done, and that lawful persons were selected and served as jurors. Elliott App. Proc. section 723.

At common law, relationship by consanguinity or affinity within the ninth degree, computed according to the rules of the civil law, is good grounds for challenge.

And it seems that this relationship could not be waived. *Oakley* v. *Aspenwall*, 3 Com. 550; *Edwards* v. *Russell*, 21 Wend. 63. These rules have been changed in this State by statute.

The fact that a juror is related to one of the parties within the inhibited degrees does not absolutely disqualify him from serving. The eleventh subdivision of section 240, R. S. 1894 (section 240, R. S. 1881), provides that "when a person is required to be disinterested or indifferent in acting on any question or matter affecting other parties, consanguinity or affinity within the sixth degree inclusive, by the civil law rules, or within the degree of second cousins inclusive, shall be deemed to disqualify such person from acting except by consent of the parties." It has been held that this statute applies to jurors. *DeArmond* v. *DeArmond*, 10 Ind. 191; *Hudspeth* v. *Herston*, 64 Ind. 133.

It will be seen from this statute, that the relationship may be waived and the juror permitted to serve. If the real parties in interest had knowledge of the relationship when the juror was examined on his *voir dire*, and they failed to make it appear to the court, they will be deemed to have waived the relationship, or to have consented that the juror might serve, notwithstanding such relationship. It is not enough to show that the nominal party had no knowledge, but it must be made to appear that the real parties, when they are present and active in the conduct of the action, had no knowledge. The showing in this case fails to make this appear.

The presumption is in favor of the correctness of the decision of the trial court in overruling the motion for a new trial. It is incumbent upon the appellant not only to show error, but to show that the error was prejudicial or probably prejudicial to him.

The real parties in interest, the beneficiaries, the actual

plaintiffs, were all jointly interested in the prosecution of the suit. If they seek a new trial on account of the incompetency of the juror, and that they had no knowledge thereof, they should show that none of them had such knowledge or that none of them waived the incompetency.

If the nominal party had no knowledge of the relationship, and the real and active parties in interest had such knowledge, but failed to take advantage of it, or consented that the juror might serve, it would be a travesty upon justice to permit the want of knowledge on the part of the nominal party to overthrow the judgment when the real party had such knowledge and waived or consented to the juror serving.

A shadow ought not be permitted to outweigh the substance. It does not appear that the real parties in interest had no knowledge of the relationship at the time the juror was accepted. This, under the circumstances shown, must be made to appear affirmatively before the appellant's contention will be permitted to overthrow the judgment.

But aside from the question of waiver, were the juror and the appellee related? It is clear that they were not related by consanguinity. If related at all it was by affinity. Appellant's contention is that they were related by affinity, while appellee insists that no relationship exists between them by affinity.

Affinity is an artificial relationship. Bouvier Law Dic., defines it thus : "The connection existing in consequence of marriage between each of the married persons and the kindred of the other. It is distinguished from consanguinity, which denotes relationship by blood. Affinity is the tie which exists between one of the spouses with the kindred of the other. Thus the relations of my wife, her brothers, her sisters, her uncles,

are allied to me by affinity; and my brothers, sisters, etc., are allied in the same way to my wife. But my brother and the sister of my wife are not allied by the ties of affinity." Anderson's Law Dic., defines affinity as "The tie which arises from marriage between the husband and the blood relations of the wife, and between the wife and the blood relations of the husband."

In *Higbe* v. *Leonard*, 1 Denio, 186, this language is used: "A husband is related by affinity to all the *consanguinei* of his wife and *vice versa* the wife to the husband's *consanguinei;* for the husband and wife being considered one flesh, those who are related to the one by blood are related to the other by affinity. But the *consanguinei* of the husband are not at all related to the *consanguinei* of the wife."

It is apparent from these definitions that relationship by affinity always depends upon the blood of the two spouses, and cannot extend beyond such blood kindred. The definitions exclude the affinity relatives of the respective spouses. My wife's brother's wife is related to my wife by affinity because of the blood relationship existing between my wife and her brother; but she is not related to me by affinity, because there is no blood in common between us. In other words, the affinity relatives of my wife are not my affinity relatives, and *vice versa.*

Whilst the husband and wife are sometimes figuratively said to be one flesh, they are not necessarily of one blood, for marriage by blood relations within certain degrees are forbidden. It is the offspring that is of the blood of both. In determining the degrees of relationship by consanguinity or affinity, like in determining the descent of property, we must proceed from a single definite *propositus.* In the descent of property

the *propositus* is the ancestor or person from whom the descent is reckoned. In consanguinity it is a simple definite person; and in affinity it is a single definite marriage. Relationship by affinity extends only through one marriage. The two lines of blood meet in the husband and wife. One line of affinity extends from the husband to the wife's blood kindred and the other line extends from the wife to the husband's blood kindred. But new blood cannot be introduced by the marriage of the affinity relatives of either. If it be assumed that a husband and wife are of one flesh or blood in consequence of the marriage, then the blood relations of each become related by consanguinity, and each additional marriage would introduce a new line of blood. Thus when my wife's brother marries, his wife becomes related to me, and when his wife's sister marries, her husband becomes related to me. This would lead to infinite absurdity. Or if it be assumed that relationship by affinity extends through more than one marriage, then my wife's blood relation can extend my affinity relationship by their marriages; and we would have degrees of affinity based upon the number of marriages; or by adding another degree for each marriage, just as appellant's counsel have done in their brief, in which it is asserted that the juror and the appellee are related in the seventh degree by affinity. This would make relationship by affinity of more importance than relationship by consanguinity, upon which it is based.

The degrees of relationship by consanguinity of a husband or wife to a third person is determined by counting up to the common ancestor and down to the related party, and the degree of relationship by affinity is found by counting up to the common ancestor of the *consanguinei* and then counting down.

The juror complained of was related to appellee's

wife by affinity only.   This did not relate the juror and appellee by affinity.   The husbands of second cousins could not possibly fall within the line of computation. The juror cannot be related to the appellee without departing from the principle upon which relationship by affinity is determined.   It is sometimes said that there is a connection between parties arising from marriage, which is neither consanguinity nor affinity.   It is called *affinitas affinitatis*, Bouv. Dic. (Erskine's Inst., 1, 6, 8).   It is sometimes confused with and called affinity.   As a general rule, however, this connection is too vague and shadowy for judicial cognizance.   In any event it is not recognized by our statute.   Section 240, *supra*.

It is true that in some cases this relationship or connection has been recognized by the courts.   Thus in *Markham* v. *Lee*, 22 E. 4, 2 (cited in *Mounson* v. *West*, 1 Leonard Rep. 89), the defendant's challenge to the array was sustained, because the sheriff's wife was a sister to the plaintiff's wife.   And in 15 H. 7, 9 (cited in Leonard Rep. 89), the challenge was sustained because the brother of the wife of the defendant had married the daughter of the sheriff.

In *Foot* v. *Morgan*, 1 Hill (N. Y.), 654, it was held that a justice of the peace who had married the sister of the plaintiff was incompetent to try the case.   And in *New York, etc., R. R. Co.* v. *Schuyler*, 28 How. Prac. 187, it was held that a judge who had married the first cousin of one of the defendants was incompetent, etc.

These are the only cases which have come under our observation which directly support appellant's contention.   The appellant cites and relies upon the case of *Paddock* v. *Wells*, 2 Barb. Ch. 331.   It is there said: "Relationship by affinity may also exist between the

husband and one who is connected by marriage with a blood relative of the wife.   Thus where two men marry sisters they become related to each other in the second degree of affinity, as their wives are related in the second degree of consanguinity."   This latter statement is mere *dictum* for there was no such question before the court.   The question there before the court was whether or not the vice-chancellor was competent to sit, he being a first cousin of a former husband of the defendant; there being issue living of the first marriage.

We believe the weight of authority as well as reason and logic is opposed to appellant's contention.   In Coke Litt. 527, it is laid down that the marriage of the juror's son with the daughter of the plaintiff is not a principal cause of challenge as it would be if the juror himself had married the daughter of the plaintiff.

In 2 Steph. Com., it is said :   "The *consanguinei* of the wife are the *affines* of the husband and *vice versa*; but the *affines* of the wife are not those of the husband, nor are the *affines* of the husband those of the wife."

In *Waterhouse* v. *Martin*, Peck (Tenn.) 374, it is held that there is no relation by affinity between a party to the suit and the judge whose son's wife is an aunt of such party.   In *Hume* v. *Bank*, 10 Lea (Tenn.) 1, it is held that a judge is not incompetent to sit in a cause in which the husband of his wife's sister is a party.

In *Poydras* v. *Livingston*, 5 La. (2 Martin, 482, 293), it was decided that although the wives of the judge and the defendant were related by consanguinity in the fourth degree, the husbands were not related by affinity, and that the judge was not disqualified.

In *Chinn* v. *State*, 47 Ohio St. 575 (11 L. R. A. 630), it was held in a criminal case that a defendant was not related by either consanguinity or affinity to his wife's

brother's wife.    See also Cooper's Justinian 422 ; Taylor's Civil Law 339 ; 1 Bishop Mar. and Div., section 314 ; Justinian Inst. 1, 10, 6 ;  1 Chitty's Black. 485, note 5.

The juror was not incompetent.    Under this rule above stated, it is true that if two men should marry sisters, one would not be disqualified by this fact alone from serving on a jury where the other is a party.    But there are many other grounds for challenging a juror than those enumerated in the statute.    A juror must be disinterested, impartial, free from bias and prejudice.    If by reason of his relationship or by reason of his association with a party he has become biased or prejudiced or rendered partial, he may be challenged for such cause.    Thornton Juries and Inst. page 79.

Another cause for a new trial is that a juror, Pickens, was incompetent for the reason that "the mother of the wife of this juror was a full cousin to the first wife of William Roach, and this Mrs. Roach was the mother of the wife of the defendant (appellee)̓, Thomas L. Phillips."

In other words, the mother of the juror's wife and the mother of appellee's wife were first cousins by consanguinity.

This makes the juror's wife and appellee's wife related in consanguinity in the sixth degree, or second cousins.

But this, under the rule above stated, did not relate the juror and appellee by affinity.

Another cause for a new trial is that the court erred in giving instructions 1, 2, 3, 4, 5 and 6 on its own motion.    This is a joint assignment, and if any one of the instructions is good, the cause is not well assigned. Some of these instructions are not assailed, and are unquestionably good.

It is lastly contended that the court erred in refusing

to give instructions 3, 5, and 6, asked by the appellant. This is also a joint assignment. No specific objection is made to the 6th. The court instructed the jury fully, and when the instructions refused are considered in connection with those given, the appellant has no cause for complaint.

Judgment affirmed.

Ross, J. concurs in result, but thinks the decision overrules *Hudspeth* v. *Herston*, *supra*, and it should be so stated.

Gavin, J.—I am not satisfied that a waiver is established as against heirs who were neither parties to the suit nor appearing and participating in the prosecution of the cause. Upon the affinity question I concur.

