Robert WHITE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Appellee.

No. 18A04–0102–CR–58.

Court of Appeals of Indiana.

Oct. 23, 2001.

Alan K. Wilson, Public Defender, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Robert White ("White") appeals his Class A felony rape conviction. He raises two issues on appeal, which we restate as:

I.  Whether it was error to allow a peremptory strike of an African American prospective juror over the objection of the defendant; and,

II.  Whether it was error to base White's sentence upon information contained in a pre-sentence investigation report.

We affirm.

### Facts and Procedural History

The facts most favorable to the judgment below indicate that in May of 2000, White forced his way into R.A.'s apartment in Muncie, Indiana. White threatened to kill R.A. with a knife, performed oral sex on her, and raped her twice. A jury found White guilty of Class A felony rape.[1] The trial court sentenced White to forty (40) years in prison.[2]

During voir dire, Ivan Wright ("Wright"), one of the prospective jurors, stated that his wife and White's father are first cousins and that he knows White's mother. Wright also stated that he was a member of the Muncie Police Department Reserves in the 1970s. Wright then said that he "would rather not sit on the jury," and when the prosecutor asked him if he would feel uncomfortable, he answered affirmatively. Tr. p. 93–95. Nevertheless, Wright also stated that if he were chosen for the jury, he would not feel like he had to answer to his relatives. Tr. p. 93. The

State used one of its peremptory strikes to excuse Wright.

The trial court judge held a hearing outside the presence of the jurors to allow White an opportunity to argue his challenge of the excusal of Wright. At White's request, the trial court took judicial notice of the fact that both White and Wright are African–American. White argued that during voir dire Wright stated that he could be fair and that White could see no reason other than race for the dismissal of Wright as a juror.

The State responded that they struck Wright because he was related to the defendant, because he knew the defendant's mother, and that the peremptory strike was not race based. The trial court then denied White's challenge without explanation. The jury was eventually seated and sworn and the trial proceeded. The trial lasted three days and on November 22, 2000, after deliberations, the jury found White guilty of rape, a Class A felony.

On February 12, 2001, White was sentenced to serve forty (40) years in prison with 288 days of credit for time served. Before the sentencing hearing, White was allowed to review the pre-sentence investigation report compiled by Marion Townsend, the court probation officer. At the hearing, White complained of several inaccuracies in the pre-sentence report. White first claimed that the report erroneously lists convictions for child molestation and confinement on July 3, 1985 as Class D felonies, rather than misdemeanors. White next claimed that he had no knowledge of a Class D felony theft conviction on August 15, 1985. White then claimed that the report erroneously lists a Class D felony habitual traffic offender conviction

---

1.  Ind.Code § 35–42–4–1(b) (1998).

2.  Ind.Code § 35–50–2–4 (1998) ("A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with

not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances . . . .").

in 1993 in duplicate. And lastly, White asserted that he had no knowledge of an assault and battery arrest in April 1993, and regardless, the report does not list a disposition for the arrest.

The trial court then considered all listings in the pre-sentence report and White's allegations of error. The trial court found that White was on probation at the time of the current offense, and that "there is a great risk that [White] would commit another crime." Tr. p. 496–97. The trial court found White's history of criminal behavior dating back to when White was thirteen years old, including his multiple felony convictions, as an aggravator for purposes of sentence enhancement. The court found a second aggravator because White was on probation at the time of the current offense. The trial court did not discuss any mitigating factors at the hearing. The court then sentenced White to forty (40) years in prison with credit for 288 days served, and a fine of $125.00. White now appeals.

### I. Peremptory Strike

■ White argues that the trial court improperly denied his challenge to the prosecutor's use of a peremptory strike on Wright, an African American prospective juror. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). For our purposes though, we need not discuss whether White proved prima facie discriminatory intent on the part of the State, whether the State presented a race-neutral reason, and how the trial court decided the matter. In this case, Wright should have been relieved of jury duty for cause because of his relation to White.[3]

Indiana Code section 35–37–1–5(a)(4) states: "That the person is related within the fifth degree ... to the defendant," is a good cause for challenging any person called as a juror for a criminal trial. Ind. Code § 35–37–1–5(a)(4) (1998). Indiana Code section 1–1–4–1(6) provides further guidance by stating that:

When a person is required to be disinterested or indifferent in acting on any question or matter affecting other parties, *consanguinity or affinity* within the sixth degree, inclusive, by the civil law rules, or within the degree of second cousin, inclusive, disqualifies the person from acting, except by consent of the parties.

Ind.Code § 1–1–4–1(6) (1998) (emphasis added). The Oxford English Dictionary defines "related to" as: "Connected by blood or marriage (*to* another, or with each other)." *Oxford English Dictionary* (J.A. Simpson & E.S.C. Weiner eds.) (2nd ed.1989) (emphasis in original).[4]

■ "Consanguinity" is defined as: "The condition of being of the same blood; relationship by descent from a common ancestor; blood-relationship. (Opposed to *affinity*, i.e. relationship by marriage.)" *Id.* "Affinity is the tie which exists between one of the spouses with the kindred of the other." *Tegarden v. Phillips*, 14 Ind.App. 27, 32, 42 N.E. 549, 551 (1895). Additionally,

[a] husband is related by affinity to all the *consanguinei* of his wife and *vice versa* the wife to the husband's *consanguinei;* for the husband and wife being considered one flesh, those who are re-

---

**3.** Neither party specifically raised the issue of excusing Wright for cause during voir dire or in their appellate briefs. The relationship between Wright and White was merely raised by the State as a race-neutral reason for using a peremptory strike against Wright after White challenged the strike as being racially motivated.

**4.** The Oxford English Dictionary also defines "relative" as: "One who is connected with another or others by blood or affinity; a kinsman;" and "relation" as: "Connexion (sic) between persons arising out of the natural ties of blood or marriage; kinship." *Oxford English Dictionary* (J.A. Simpson & E.S.C. Weiner eds.) (2nd ed.1989).

lated to the one by blood are related to the other by affinity. But the *consanguinei* of the husband are not at all related to the *consanguinei* of the wife. *Id.* at 33, 42 N.E. at 551 (quoting *Higbe v. Leonard*, 1 Denio 186, 187 (N.Y.Sup.Ct. 1845) (citations omitted)).

■ Therefore, even though Indiana Code section 35–37–1–5(a)(4) does not specifically state whether it applies to those potential jurors that are related to the defendant by consanguinity, affinity, or either, we hold that a reasonable interpretation of the statute disqualifies the potential juror who is related to the defendant by either consanguinity or affinity, because both the Indiana rule of construction and the reasonable understanding of "related to" include relatives by both consanguinity and affinity.

The next issue is the degree of relation between Wright and White. "[T]he degree of relationship by affinity is found by counting up to the common ancestor . . . and then counting down." *Id.* at 34, 42 N.E. at 551. Wright testified that his wife and White's father are first cousins, making White and Wright's wife first cousins once removed. White's great-grandfather, who is also Wright's wife's grandfather, is their common ancestor. Counting up from White to his great-grandfather, there are three degrees. Counting down from the common ancestor to Wright's wife, there are two degrees. This means that White and Wright's wife (therefore Wright by affinity) are related by the fifth degree.

Although the State peremptorily struck Wright from the jury and White challenged the strike as racially motivated, Wright could have been disqualified from jury service for cause in this case because he is related to White within the fifth degree, as described in Indiana Code sec-

tion 35–37–1–5(a)(4).[5] We therefore find that the State's peremptory challenge of White was permissive, even under *Batson*.

## II. Sentence

■ White next argues that the trial court improperly based his sentence on information in a pre-sentence investigation report that he alleges is false, and requests that this court remand this case for a re-sentencing at which the probation officer and the State would be required to produce certified records of any prior convictions and the trial court would be required to specify its findings with respect to White's prior criminal history. We review the trial court's sentencing decision, including the enhancement, for abuse of discretion. *See Price v. State*, 725 N.E.2d 82, 85 (Ind.2000).

■ When a trial court makes its sentence decision, "the rules of evidence, other than those concerning matters of privilege, do not apply." *Bluck v. State*, 716 N.E.2d 507, 512 (Ind.Ct.App.1999) (citing Ind. Evidence Rule 101(c)(2); *Jackson v. State*, 697 N.E.2d 53, 55 (Ind.1998)). The purpose of a sentencing hearing "is to determine the type and extent of punishment[,]" not whether the defendant is guilty. *Id.* (citing *Thomas v. State*, 562 N.E.2d 43, 47 (Ind.Ct.App.1990)). The rationale for relaxed rules of evidence during sentencing is that "[t]his individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics." *Id.* (quoting *Thomas*, 562 N.E.2d at 47). Nevertheless, a defendant has the right to challenge any information used in determining a sentence. *See Dillon v. State*, 492 N.E.2d 661, 663 (Ind.1986) (citations omitted).

On the originally scheduled hearing date, Thursday, February 8, 2001, defense

---

**5.** We will not address the peremptory strike challenge in full in this case because we find

that Wright could have been disqualified for cause.

counsel informed the court that although he was notified the day before that the pre-sentence investigation report was available, he had not been able to retrieve it until that morning. He also told the court that White had just received a copy of the report that morning as well. Defense counsel requested a continuance, and the court granted a four-day continuance, until Monday, February 12, 2001. At the rescheduled sentencing hearing, February 12, 2001, the trial court asked White if he and his attorney had read and examined the report and White answered affirmatively. The trial court then gave White the opportunity to present any statements with regard to the pre-sentence investigation report. White challenged several of the listings in the report, arguing that the report inaccurately reflected two convictions (one for child molestation and one for confinement) as Class D felonies rather than misdemeanors, that the report improperly attributed a Class D felony theft to him, and that a Class D felony habitual traffic offender conviction was improperly listed twice.

After White testified and both sides argued their positions to the court about the appropriate sentence, the trial court judge sentenced White to forty (40) years in prison, composed of the thirty (30) year presumptive sentence for a Class A felony and a ten (10) year enhancement. Ind. Code § 35–50–2–4 (1998). The trial judge considered all of the information before the court, including the pre-sentence report and White's allegations of errors in the report. The judge found that "the nature and circumstance of the crime[,] ... rape is a most serious offense," and there is "a high probability that [White]

would commit another offense" because White's criminal history dates back to age thirteen and White was on probation at the time of the current offense. Tr. p. 496–97. These were proper considerations. Ind. Code § 35–38–1–7.1(a) (Supp.2000). The judge then found two proper aggravators: a history of multiple felonies, and commission of the current crime while on probation. Tr. p. 497; see also Ind.Code §§ 35–38–1–7.1(b)(1), –7.1(b)(2) (Supp.2000).

The parties disagree about the exact number of felonies the trial judge should have considered in reaching his sentence decision. White asserts that he was only convicted of four prior felonies; the State asserts that White was convicted of six felonies; and the trial court judge regarded five felonies at the sentencing hearing. Nevertheless, the sentencing statute makes any criminal history a possible and proper aggravator. Ind.Code § 35–38–1–7.1(b)(2) (Supp.2000). There is no requirement that the prior criminal history of a defendant include felonies in order to be an aggravator for the purposes of this statute, let alone a requirement of an exact number of felonies. The trial court judge found that White has a "history which goes back to age thirteen and multiple felonies.... [And, t]here were offenses which during his juvenile period which if committed by an adult would be a felony. There were numerous of those." Tr. p. 497. Under these facts and circumstances, the trial court judge properly found White's prior criminal history an aggravator in this case regardless of the exact number of White's prior felony convictions.[6]

Even though we agree with White that he is "entitled to be sentenced only on the

6. Alternatively, had we found that the trial court judge erroneously found White's prior criminal history to be an aggravator, we would still affirm the trial court judge's decision because "[o]ne aggravator alone is sufficient to warrant an enhanced sentence[,]" and there is no argument that White was on probation at the time of the commission of this offense, which is an important and prop-

basis of accurate information[,]" *Dillon*, 492 N.E.2d at 663 (quoting *Gardner v. State,* 270 Ind. 627, 638, 388 N.E.2d 513, 520 (1979)), we cannot find that the trial court abused its discretion in sentencing White to forty (40) years in prison because the unchallenged information in the pre-sentence report alone is enough to support the trial court's exercise of discretion. Even if the trial court accepted all of White's allegations of error in the pre-sentence report (which he is not obligated to do), White does not dispute his lengthy juvenile record, any of the misdemeanor convictions (there are at least five), and at least three of the felony convictions.

### Conclusion

We find that Wright, an African–American potential juror, was properly excluded from serving on the jury and the trial court did not abuse its discretion in sentencing White to forty (40) years in prison.

We affirm.

DARDEN, J., and VAIDIK, J., concur.

er aggravator under Indiana Code section 35–38–1–7.1(b)(1). *See Jackson,* 697 N.E.2d at 56 (citing *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993)).