CRIMINAL INJURIES COMPENSATION BOARD *v.*
BETTY ALLEN REMSON ET AL.

[No. 121, September Term, 1977.]

*Decided March 23, 1978.*

The cause was argued before SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Gilbert H. Robinette, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Darlene G. Perry,* with whom were *Camus & Perry* and *Edward P. Camus* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

This case calls upon us to construe certain provisions of the Criminal Injuries Compensation Act, Maryland Code (1957, 1973 Repl. Vol.) Art. 26A, §§ 1-17 (the Act) [1] and to ascertain the law relating thereto. We have determined:

> (1) The Criminal Injuries Compensation Board (the Board) shall determine as a matter of fact that the act serving as the basis of a claim has been committed in Maryland and would constitute a crime as defined by Art. 27 of the Maryland Code or at common law, and, where material, shall determine as a matter of fact the persons criminally responsible for such crime.
>
> (a) Criminal prosecution is not necessary for an award.
> (b) The results of any criminal prosecution had are not conclusive as to the commission of a crime or as to the criminal

---

1. Unless otherwise indicated, section references hereinafter cited in this opinion are to the Criminal Injuries Compensation Act.

responsibility therefor, but may be of probative value.

(2) Consanguinity is relationship by blood.

(3) Affinity is relationship by marriage. It is the connection between one spouse and the blood relatives of the other spouse.

(a) An affine of one spouse is not related to an affine of the other spouse.

(4) The degree of relationship of consanguinity or affinity is to be reckoned by the civil law method.

(a) In the reckoning with respect to affinity, husband and wife are deemed to be one person. The lateral, bridging step between them is not counted as a degree.

(5) When two or more persons are criminally responsible for the crime on which the claim is based, and the relationship between any one of such persons and the claimant is such that the claimant is ineligible for an award under the Act, an award is prohibited.

Enacted by Acts 1968, ch. 455, the declared legislative policy and intent of the Act was to enable innocent victims of crime to receive compensation through government financial assistance. § 1. *See Gossard v. Criminal Inj. Comp. Bd.,* 279 Md. 309, 310, 368 A. 2d 443 (1977); *Frazier v. Unsat. C. & J. Fund Bd.,* 262 Md. 115, 119, 277 A. 2d 57 (1971). *See generally, Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 495-496, 331 A. 2d 55 (1975). *See also* Note, *Criminal Victim Compensation in Maryland,* 30 Md. L. Rev. 266 (1970); L. Lamborn, *The Methods of Governmental Compensation of Victims of Crime,* Univ. of Ill. L. Forum 655 (1971).

Among those persons who are eligible for awards under the Act are "[a] surviving spouse or child of a victim of a crime who died as a direct result of such crime . . . ." [2] § 5 (a) (2).

---

2. " *'Crime'* shall mean an act committed by any person in the State of Maryland which would constitute a crime as defined in Article 27 of the Annotated Code of Maryland (1967 Replacement Volume) or at common law,

The provisions of the Act primarily involved here are those prescribed by § 5 (b), as explicated by § 2 (d) (1), pertaining to exceptions to eligibility for an award. Section 5 (b) reads:

> "A person who is criminally responsible for the crime upon which a claim is based or an accomplice of such person or a member of the family of such persons shall not be eligible to receive an award with respect to such claim."

Section 2 (d) (1) defines " 'family' when used with reference to a person" to mean

> "any person related to such person within the third degree of consanguinity or affinity . . . ." [3]

## I

Richard Elmer Remson, Sr. and Betty Allen Remson were husband and wife. Five children were born of their marriage. Mr. Remson died on 10 March 1974, leaving surviving his spouse and the five children, each of whom was a minor and dependent on him. The cause of his death was felonious homicide. Frederick Eugene McCutchan, Sr., Frederick Eugene McCutchan, Jr. and Alan Tracy McLaughlin were prosecuted for the murder of Remson. In the criminal cause, only McCutchan, Sr. and McCutchan, Jr. were found to be criminally responsible for Remson's death. A jury found McCutchan, Sr. guilty of manslaughter and not guilty of murder in the first degree and in the second degree.

---

provided, however, that no act involving the operation of a motor vehicle which results in injury shall constitute a crime for the purpose of this article unless the injuries were intentionally inflicted through the use of a vehicle." § 2 (c).

3. Section 2 (d) reads in its entirety:

> " '*Family*' when used with reference to a person, shall mean (1) any person related to such person within the third degree of consanguinity or affinity, (2) any person maintaining a sexual relationship with such person, or (3) any person residing in the same household with such person."

We said in Gossard v. Criminal Inj. Comp. Bd., 279 Md. 309, 312, 368 A. 2d 443 (1977) that this definition of "family" was unambiguous so that there was no reason to look elsewhere for assistance in interpreting its meaning.

McCutchan, Jr. pleaded guilty to manslaughter. Maryland Rule 724 (now Rule 731 e). He was convicted of that offense by the court upon acceptance of the plea. A *nolle prosequi* was entered as to the two degrees of murder. Rule 711 (now Rule 782 a and b). McLaughlin was acquitted of all charges. Each of McCutchan, Sr. and McCutchan, Jr. and McLaughlin, however, were found to be civilly responsible for Remson's death. In a law action in the Circuit Court for Prince George's County an award of damages was returned by a jury against all three of them in favor of Remson's surviving spouse and the five children.[4]

The deceased victim was the brother of Mary McCutchan. Mary McCutchan was the wife of McCutchan, Sr., and McCutchan, Jr. was their son. *See* APPENDIX IV. McLaughlin was not related to any of the other persons.

About the middle of April 1974, Mrs. Remson filed a death benefits claim with the Criminal Injuries Compensation Board (the Board). § 6. The claim was accepted by the Board and assigned to a Commissioner, § 8 (a), for investigation, § 8 (b). The Board obtained from the Prince George's County Police Department a report of the Department's investigation of the death of Mr. Remson. The report, under date of 15 March 1974, gave the status of the investigation as "CLOSED: 3 Adult Arrests." The Commissioner reviewing the claim filed his report. § 8 (d), (e) and (f). He made "FINDINGS OF FACT":

> "Claimant's husband was beat to death during a family altercation in Prince George's County by his brother-in-law and nephew."

He gave his "CONCLUSIONS OF LAW":

> "We find after reviewing the file, the evidence submitted and after due deliberation that the claimant is ineligible to receive an award from this Board. This type of crime is specifically excluded by

---

4. Counsel for the surviving spouse and the children suggested that "[t]here is very little likelihood that the judgment will be collected from the defendants." What action, if any, has been taken to collect it is not shown in the record before us.

Sections 2 (d) (3) and 5 (6) (b) of Article 26A of the Annotated Code of Maryland. These sections exclude members of a family, up to the third degree of affinity and consanguinity, of those who are responsible for the crime from becoming eligible to receive an award under the statute.[5]

He denied the claim:

"WHEREFORE, it is ordered this 25th day of June 1974 that the herein claim be disallowed."

Mrs. Remson made application for consideration of the decision by the full Board. § 9 (a). She called to the Board's attention that McLaughlin, the third person charged with Mr. Remson's murder, was "in no way related to the Remsons either by consanguinity or affinity." By letter dated 12 November 1974, Mrs. Remson's attorney informed the Board of the results of the prosecution of McCutchan, Sr., McCutchan, Jr. and McLaughlin.

The Board reviewed the record and affirmed the decision of the Commissioner. § 9 (b). The report of the final decision of the Board was undated but was transmitted to Mrs. Remson's attorney by letter of 23 January 1975. § 9 (c). It set out verbatim the findings of fact, conclusions of law and the order as contained in the Commissioner's report of 25 June 1974. The Board report continued:

"Claimant upon reconsideration alleges that a third party was also charged with the homicide of the claimant's husband and that he was in no way related to the family. This third party has recently been tried and found not guilty of all charges pertaining to the incident.

---

5. We have set out above § 2 (d) in its entirety. It is obvious from what the Commissioner said concerning the sections he referred to that he meant § 2 (d) (1) and not § 2 (d) (3). There has never been any indication that McCutchan, Sr. or McCutchan, Jr. resided in the same household with Remson or that the resolution of the claim depended upon other than the application of § 2 (d) (1) to § 5 (b). There is no § 5 (6) (b). The Commissioner obviously meant § 5 (b).

## CONCLUSIONS OF THE LAW

"The Board concludes that upon the facts of this case, the conclusions of the Commissioner below cannot be characterized as clearly erroneous. Accordingly for reasons sufficiently stated in his opinion the decision below will be affirmed."

By letter dated 6 October 1975 Mrs. Remson's attorney "formally" requested the Board to reverse its conclusions of law as set out in its decision of 25 June 1974. The basis of the request was the Memorandum Opinion of Liss, J. in the case of *Alimo v. Criminal Injuries Compensation Board of Maryland,* Superior Court of Baltimore City, 1973/824/138213, "wherein he strikes down this affinity clause for a 'brother-in-law' assailant." "Our facts," the attorney alleged, "involved a brother-in-law and appears to be on 'all fours' with this decision." In reply, the Board stated that the *Alimo* case was currently on appeal to the Court of Appeals. "Accordingly, your request for reconsideration is premature at this time. We suggest you diary your file ahead and contact us after the decision is rendered by the Court of Appeals." On 16 September 1976, upon inquiry by the attorney of the status of the Alimo appeal, the Board informed him that the appeal had been dismissed by the Court as not timely filed, so that the Court "never had a chance to rule on the family issue." The Board declared that its position was "that its original findings of June 25, 1974 remain the same." The report of the "Reconsideration of the Full Board Decision" read:

"On October 6, 1975 the claimant requested this Board to reconsider its Decision denying an award to the claimant in the above-captioned case.

It is hereby ordered this 22nd day of September, 1976 that the Board's decision of June 25, 1974 be re-affirmed by this Full Board."

On 21 October 1976 Mrs. Remson and the children filed a "Petition for Judicial Review of Decision of Criminal Injuries Compensation Board of Maryland" in the Circuit Court for

Prince George's County. Code (1957, 1973 Repl. Vol., 1977 Cum. Supp.) Art. 26A, § 10; Code (1957, 1971 Repl. Vol.) Art. 41, § 255.[6] The case was submitted to the court on stipulated facts, in substance as we have set them out above. The court, leaning "heavily" on the opinion of the nisi prius court in the *Alimo* case, held that the exception contained in § 5 (b) as amplified by § 2 (d) (1) was not applicable either to the wife or the children. The court said:

> "Affinity is generally defined as a relationship by marriage between a husband and his wife's blood relatives or between a wife and her husband's blood relatives. . . . Now, applying this definition to our fact situation, there is clearly no affinity for the claimant, that is the wife. And the criminal perpetrators do not have any common blood ties by virtue of marriage."

The court remanded the case to the Board "for a determination of the claim of the petitioners in accordance with the views herein set forth." The court made clear that remand included the claim on behalf of the children — "The children are, of course, included."

The Board appealed to the Court of Special Appeals. Code (1957, 1973 Repl. Vol., 1977 Cum. Supp.) Art. 26A, § 10 (c);

---

**6.** Mrs. Remson did not seek judicial review from the final order of the full Board of which she was notified by letter dated 23 January 1975. Prior to 1 July 1975, statutory authority to seek judicial review of a final decision by the Board was limited to the Attorney General. Code (1957, 1973 Repl. Vol.) Art. 26A, § 10. In Criminal Inj. Comp. Bd. v. Gould, 273 Md. 486, 500-503, 512-513, 331 A. 2d 55 (1975), we held that the courts are vested with the inherent residual right to review and restrain improper exercises of administrative powers by agencies alleged to have acted arbitrarily, illegally, capriciously and unreasonably. By Acts 1975, ch. 204, effective 1 July 1975, subsection (c) was added to § 10. It provided: "Within 30 days of the final decision of the Board, any claimant aggrieved by the final decision may appeal the decision under the applicable provisions of the Administrative Procedure Act, Article 41, §§ 255 and 256 of the Code."

The petition for judicial review here was timely taken, Maryland Rule B 4 a, from the order of the Board of 22 September 1976. We do not think that the judicial review in the circumstances was limited to the propriety of the denial of the motion to reconsider the order of the full Board. Because the Board on 22 September 1976 ordered that "the Board's decision of June 25, 1974 be re-affirmed by this Full Board," the propriety of the decision of 25 June 1974 as affirmed by the full Board in January 1975 was before the trial court.

Code (1957, 1971 Repl. Vol., 1977 Cum. Supp.) Art. 41, § 256. We granted a writ of certiorari before decision by that court.

## II

The claimants concede that the Board's appeal has been taken within thirty days of the action of which it complains, but, they urge, "it is not taken from a final judgment nor from a final decision . . ." as is required, and, therefore, should be dismissed. They assert: "The sole determination made by the Board was that the Remson widow and children do not qualify for an award because they fell within the 'family'-of-the-assailant proscription of the statute. The Circuit Court reversed the Board and remanded the case for determination of award." As the claimants see it, issues remain which have been remanded for determination by the Board. Therefore, the judgment of the circuit court is not final. We do not see it that way. We think that the judgment by the circuit court that the "family" of the assailant proscription did not apply was a "final" judgment in the contemplation of the statutory right to secure a review bestowed by Code (1957, 1971 Repl. Vol., 1977 Cum. Supp.) Art. 41, § 256. Claimants rely solely on *United States Fire Ins. v. Schwartz,* 280 Md. 518, 374 A. 2d 896 (1977). In *Schwartz* there remained "for decision complex issues which have been remanded for determination by the agency most qualified to resolve them." *Id.* at 523. Here, all that remained for the Board to do on remand was to determine the amount due the claimants, and that is governed by § 12 of the Criminal Injuries Compensation Act. *Schwartz* is inapposite. We reject the suggestion to dismiss the appeal.

## III

A prerequisite of eligibility for an award is that a crime within the meaning of the Act, *see* note 2, *supra,* has been committed which directly resulted in personal injury to, or death of the victim. The determination of those matters shall be made by the Board. § 12 (a) (1), (2).[7] And in circumstances

---

7. Section 12 (a) reads in its entirety:

"No award shall be made unless the Board or Board members, as the case may be, finds that (1) a crime was committed, (2) such

where the exceptions prescribed by § 5 (b) are invoked, as they are here, an award is dependent upon the identity of the person or persons who are criminally responsible for the crime. The determination of criminal agency in such circumstances is also a matter for the Board. The Act makes clear that a criminal prosecution is not necessary for the grant of an award, and that if there be a criminal prosecution, its outcome, no matter what it may be, is not *per se* determinative of whether a crime had been committed or of the identity of the person alleged to have committed it. Section 8 (c) provides:

> "Claims shall be investigated and determined, regardless of whether the alleged criminal has been apprehended or prosecuted for or convicted of any crime based upon the same incident, or has been acquitted, or found not guilty of the crime in question owing to criminal responsibility or other legal exemption."

In other words, the Board, through its own investigation and review which it is required to make, § 8 (b), (c), (d), (e) and § 9 (b), must establish the corpus delicti and, where material, the criminal agents of the crime on which the claim is bottomed. It does this irrespective of the result of any criminal prosecution; the results of a criminal prosecution have probative value in the agency's determinations of the commission of a crime and criminal agency but are not conclusive.[8]

---

crime directly resulted in personal physical injury to, or death of the victim, and (3) police records show that such crime was promptly reported to the proper authorities; and in no case may an award be made where the police records show that such report was made more than forty-eight hours after the occurrence of such crime unless the Board, for good cause shown, finds the delay to have been justified. The Board, upon finding that any claimant or award recipient has not fully cooperated with all law enforcement agencies, may deny or withdraw any award, as the case may be."

8. There are provisions in the Act whereby the Board ascertains whether there is a pending criminal prosecution for the alleged crime on which a claim is based, and, if there is, proceedings on the claim shall be deferred, except for emergency awards, until the criminal prosecution has been concluded. § 6 (d).

In the case *sub judice,* no question has been raised at any time with respect to the fact that a crime was committed which directly resulted in Remson's death so as to serve as the basis for a claim. No one has disputed the criminal agency of either McCutchan, Sr. or McCutchan, Jr. Nor is there any dispute that McLaughlin is "unrelated to anyone in this case by either consanguinity or affinity." The initial question is the criminal responsibility of McLaughlin.

In the court below, McLaughlin's status with respect to Remson's death was presented to the judge by stipulation thus:

"[T]hat two of [Remson's] assailants, McCutchan, Sr. and McCutchan, Jr. were convicted of the killing, and a third man, McLaughlin, was acquitted in a criminal proceeding. That a verdict has been returned against McCutchan, Sr., and McCutchan, Jr., and McLaughlin in Law 59,744 before this Court, and we ask the Court to take judicial notice at this time of the record in the file in that case."

In argument before the lower court, the claimants suggested that "this is a case where a man was killed by the husband of his sister, and a nephew, and a third party who was unrelated to anyone." The court proceeded to decision, however, on the premise that McLaughlin was not criminally responsible. It said: "The criminal perpetrators are the husband of the sister of the victim, that is the brother-in-law, and his son, nephew. A third individual not related to anyone involved herein was found to be not guilty." It appears that the court accepted McLaughlin's acquittal in the criminal prosecution as sufficient to establish that he was not criminally responsible for Remson's death.

On appeal before us, the Board ignores McLaughlin in its contention and argument, making no reference to his possible criminal agency. Mrs. Remson and the children claim that they are "not members of the family of the persons who were criminally responsible for the wrongful death of their husband-father." Stating that "[t]he statute is silent as to what must be done with regard to claims presented by

survivors . . . where there is a family relationship as defined by statute between the survivors and some, but not all, of the assailants," they allege that McLaughlin was "[o]ne of the assailants of Remson."

As we have indicated, the question of the criminal responsibility of McLaughlin, in the context of the exception prescribed by § 5 (b), was for the Board to decide. The Commissioner to whom the claim was assigned found as a fact that Remson "was beat to death during a family altercation in Prince George's County by his brother-in-law [McCutchan, Sr.] and nephew [McCutchan, Jr.]," thereby eliminating McLaughlin from criminal responsibility. McLaughlin had been placed squarely before the Board as an alleged perpetrator of the offense. The claim filed designated McLaughlin as an offender with McCutchan, Sr. and McCutchan, Jr. (spelling their surname "McHutchinson"). Section 8 (b) requires that the Commissioner to whom the claim is assigned "shall examine the papers filed in support of the claim and shall thereupon cause an investigation to be conducted into the validity of the claim. The investigation shall include, but not be limited to, an examination of police, court and official records and reports concerning the crime and an examination of medical and hospital reports relating to the injury upon which the claim is based." The police had thoroughly investigated the incident and their report, completed as of 15 March 1974, had been obtained by the Board and was before the Commissioner. It designated the accused as McCutchan, Sr., McCutchan, Jr. and McLaughlin and showed fully the involvement of each. The status of the investigation was designated as "CLOSED: 3 Adult Arrests," namely, the three accused. In applying for a review by the full Board of the Commissioner's decision, the attorney for the Remsons expressly called attention to McLaughlin: "My investigation discloses that the third party, Alan McLaughlin, has also been charged with murder, and is in no way related to the Remsons either by consanguinity or affinity." The full Board, nevertheless, upon review of the record, § 9, affirmed the decision. In its order, as we have seen, the Board repeated verbatim the findings of fact and conclusions of law of the

Commissioner. It expressly referred to McLaughlin and to the Remsons' allegation that he had been charged with the homicide. It then observed that McLaughlin had "recently been tried and found not guilty of all charges pertaining to the incident." It found that "upon the facts of this case," the Commissioner was not clearly wrong.

We believe that the Commissioner and the full Board met their respective obligations concerning the determination of the criminal responsibility of McLaughlin. There were material and substantial facts before the Commissioner sufficient to support his finding on the point. As we see it, the full Board thought that the acquittal of McLaughlin in the criminal cause substantiated the finding of the Commissioner and buttressed its accord with that finding. The lower court was correct in deeming McLaughlin as not criminally responsible in the contemplation of § 5 (b), even though it may have reached that finding for the wrong reason. The lower court could not have reversed the finding of the agency as to McLaughlin's criminal responsibility since the finding was not unsupported by or against the weight of competent, material and substantial evidence in view of the entire record submitted. Code (1957, 1971 Repl. Vol.) Art. 41, § 255 (g) (5), (6). We hold that McLaughlin was properly to be excluded in determining the eligibility of the Remsons for an award.

## IV

Since McCutchan, Sr. and McCutchan, Jr. stand as the only persons criminally responsible for the crime upon which the claims were based, the exceptions for eligibility provided by § 5 (b) are to be applied with respect to them. The circumstances of this case raise issues which are basic to the application of that section. Those issues have not been decided in Maryland or in other jurisdictions in the context of a criminal injuries compensation act.[9] Some matters pertaining

---

9. Appendix I hereto enumerates statutes in other states providing compensation to victims of crimes. Sentencing statutes with restitution provisions are not included.

Appendix II designates the statutes which have provisions comparable to those of the Maryland Act making a person related to the perpetrator of the

to the issues, however, have been determined in cases involving questions in other areas, and we shall look to them for guidance.

Because a connection between a criminal agent and a claimant within the third degree of either consanguinity or affinity bars an award, the initial question is whether such a tie existed with respect to McCutchan, Sr. and McCutchan, Jr. as the criminal agents and Mrs. Remson and the children as the claimants.

*Consanguinity*

Consanguinity is relationship by blood. *Gossard v. Criminal Inj. Comp. Bd.,* 279 Md. at 311-312. It is "the connection of persons descended from the same stock or common ancestor ... and is either lineal or collateral. Lineal consanguinity is that which subsists between persons, of whom one is descended in a direct line from the other.... Collateral relations, like lineals, descend from the same ancestor, or stock, but differ in that they do not descend from each other. Instead they branch out from the common ancestor." 1 P. L. Sykes, Probate Law and Practice § 160 (1956). *See Hoffman v. Watson,* 109 Md. 532, 72 A. 479 (1909); *The State v. Greenwell,* 4 G. & J. 407 (1832).

There was no connection by consanguinity between Mrs. Remson, the wife-claimant, and either McCutchan, Sr. or McCutchan, Jr. Neither Mrs. Remson and McCutchan, Sr. nor Mrs. Remson and McCutchan, Jr. were related by blood, there being no common ancestor.

There was no connection by consanguinity between the children-claimants and McCutchan, Sr. They were not related by blood, there being no common ancestor. There was a connection between the children and McCutchan, Jr. by consanguinity. They were related by blood because there was an ancestor common to both, their grandmother. The children's father and McCutchan, Jr.'s mother, being brother

---

crime within the third degree of consanguinity or affinity ineligible for an award.

Appendix III sets out those statutes which make certain enumerated relatives ineligible for an award.

and sister, had the same mother, and it was she who was the common ancestor, being the grandmother of both the children and McCutchan, Jr. *See* APPENDIX IV.

In summary:

 (1) The wife-claimant *was* *not* related by consanguinity
   (a) to McCutchan, Sr., or
   (b) to McCutchan, Jr.
 (2) The children-claimants *were not* related by consanguinity to McCutchan, Sr.
 (3) The children-claimants *were* related by consanguinity to McCutchan, Jr.

### Affinity

Affinity is relationship by marriage. It is the connection between a spouse and the blood relatives of the other spouse. 41 Am. Jur. 2d *Husband and Wife* § 1 (1968). As the claimants assert, the meaning of affinity as the tie between one spouse and the *blood relatives* of the other spouse is the overwhelming view throughout the country.[10] But, by the great weight of authority, long established, a relationship by affinity may not exist between one spouse and a person who is connected by marriage with a blood relative of the other spouse. In other words, a relationship by affinity always depends upon the blood of the two spouses and cannot extend beyond such blood kindred; the affinity relatives of such spouses are excluded. That is, a husband is related by affinity

---

**10.** *See,* for example, Duke v. State, 257 Ala. 339, 58 So. 2d 764 (1952) (citing Kirby v. State, 89 Ala. 63, 8 So. 110 (1890)); McDaniel v. State, 228 Ark. 1122, 313 S.W.2d 77 (1958) (citing North Arkansas & W. Ry. Co. v. Cole, 71 Ark. 38, 70 S. W. 312 (1902)); Layton v. Jacobs, 21 Del. 71, 62 A. 691 (1904); State v. Wall, 41 Fla. 463, 26 So. 1020 (1899); Garrett v. State, 203 Ga. 756, 48 S.E.2d 377 (1948); Clawson v. Ellis, 286 Ill. 81, 121 N. E. 242 (1918); Tegarden v. Phillips, 14 Ind. App. 27, 42 N. E. 549 (1895); State v. Hooper, 140 Kan. 481, 37 P. 2d 52 (1934); State ex inf. Roberts v. Buckley, 533 S.W.2d 551 (Mo. 1976); Wilson v. Greenacres Country Club, 41 N.J. Super. 530, 125 A. 2d 539 (1956); Chinn v. State, 47 Ohio 575, 26 N. E. 986 (1890); Graham v. Thompson, 174 Tenn. 278, 125 S.W.2d 133 (1939); Johnson v. State, 169 Tex. Crim. 146, 332 S.W.2d 321 (1960) (citing Washburn v. State, 167 Tex. Crim. 125, 318 S.W.2d 627 (1958), *cert. denied,* 359 U. S. 965 (1959)); State v. Peterson, 110 Utah 413, 174 P. 2d 843 (1946); Doyle v. Commonwealth, 100 Va. 808, 40 S. E. 925 (1902); Davidson v. Whitehill, 87 Vt. 499, 89 A. 1081 (1914); In Re Bordeaux' Estate, 37 Wash. 2d 561, 225 P. 2d 433 (1950).

to the blood relatives of his wife, and a wife is related by affinity to the blood relatives of her husband, but as a consequence of the marriage, the husband is not related in any way to those persons to whom his wife is related only by affinity, and the wife is not related in any way to those persons to whom her husband is related only by affinity. It was put this way in *Central Railroad Co. v. Roberts,* 91 Ga. 513, 517, 18 S. E. 315 (1893) and iterated in *Garrett v. State,* 203 Ga. 756, 769, 48 S.E.2d 377 (1948):

> "The groom and bride each comes within
> The circle of the other's kin;
> But kin and kin are still no more
> Related than they were before."

In short, an affine of one spouse is not related to an affine of the other spouse.[11]

---

11. *See,* for example, Louisville & N. R. Co. v. Holland, 173 Ala. 675, 692, 55 So. 1001, 1007-1008 (1911); Mann v. State, 33 Ala. App. 115, 118, 30 So. 2d 462, 465 (1947); North Arkansas & W. Ry. Co. v. Cole, 71 Ark. 38, 40, 70 S. W. 312, 313 (1902); Cruce v. State, 87 Fla. 406, 409, 100 So. 264, 265 (1924); Tegarden v. Phillips, 14 Ind. App. 27, 33, 42 N. E. 549, 551 (1895); State v. Hooper, 140 Kan. 481, 501, 37 P. 2d 52, 64 (1934); Bliss v. Tyler, 149 Mich. 601, 608-609, 113 N. W. 317, 319-320 (1907); Wilson v. Greenacres Country Club, 41 N.J. Super. 530, 535, 125 A. 2d 539, 541 (1956); Chinn v. State, 47 Ohio 575, 579-580, 26 N. E. 986, 987 (1890); Hume v. Bank, 78 Tenn. 1, 3 (1882); Johnson v. State, 169 Tex. Crim. 146, 147, 332 S.W.2d 321, 322 (1960); Texas Employers' Insurance Association v. McMullin, 279 S.W.2d 699, 702 (Tex. Civ. App. 1955); State v. Peterson, 110 Utah 413, 420, 174 P. 2d 843, 847 (1946); Davidson v. Whitehill, 87 Vt. 499, 509-510, 89 A. 1081, 1085 (1914). *Contra,* Kelly v. Neely, 12 Ark. 657, 663 (1852) (*but see* North Arkansas & W. Ry. Co. v. Cole, *supra*); State v. Wall, 41 Fla. 463, 465-468, 26 So. 1020, 1021-1022 (1899) (*but see* Cruce v. State, *supra*); Dearmond v. Dearmond, 10 Ind. 191, 192 (1858) (*but see* Tegarden v. Phillips, *supra*); Stringfellow v. State, 42 Tex. Crim. 588, 592, 61 S. W. 719, 721 (1901) (*but see* Johnson v. State, *supra,* and Texas Employers' Insurance Association v. McMullin, *supra*).

We find no case on the point in Maryland or in about half of the other states. *See,* however, as to Louisiana, State v. Foster, 112 La. 533, 36 So. 554 (1904) (defining brothers-in-law); as to Oregon, E. Million, *Consanguinity and Affinity in Oregon,* 23 Ore. L. Rev. 69 (1944); as to West Virginia, State ex rel Anderson v. Bd. of Ed. of Mingo Cty., 233 S.E.2d 703 (W. Va. Sup. Ct. 1977).

Such connection as there is between the affines of one spouse and the affines of the other spouse is known as *affinitas affinitatis.* Chinn v. State, 47 Ohio 575, 580, 26 N. E. 986 (1890).

It appears from the cases cited in this note that the majority view is that blood relations of one spouse are not, by reason of the marriage, related to blood relations of the other spouse, that is, the respective consanguinei do not become related by affinity to each other, but that point is not involved in the case before us. *See also* 41 Am. Jur. 2d *Husband and Wife* § 1 (1968). Nor does the case here involve the issue whether one spouse is related to

There was no connection by affinity between Mrs. Remson, the wife-claimant, and McCutchan, Sr. Her tie with McCutchan, Sr. was only by the marriage of her spouse's blood relative, that is, her husband's sister, to McCutchan, Sr. McCutchan, Sr. was the affinity relative of the wife-claimant's husband, and, therefore, was excluded as her affinity relative. In other words, the wife-claimant was not related in any way to McCutchan, Sr. because her husband was related to McCutchan, Sr. only by affinity.

There was a connection by affinity between the wife-claimant and McCutchan, Jr. McCutchan, Jr. was a blood relative of her husband; he was her husband's sister's child. Thus, McCutchan, Jr. was related to the wife-claimant's spouse by consanguinity because McCutchan, Jr. and the wife-claimant's spouse had a common ancestor, *i.e.,* the mother of the spouse and the grandmother of McCutchan, Jr. Since the claimant-wife's husband was related to McCutchan, Jr. by consanguinity, the wife-claimant was related to McCutchan, Jr. by affinity.

There was a connection by affinity between the claimant-children and McCutchan, Sr. Their tie with McCutchan, Sr. was through their father who was the brother of McCutchan, Sr.'s wife. Thus, the children were related by consanguinity to their father's sister because the children and their father's sister had a common ancestor, *i.e.,* their grandmother and the mother of their father's sister. Since McCutchan, Sr. was married to the children's father's sister, and she was related to the children by consanguinity, the children and McCutchan, Sr. were connected by affinity.

There was no connection by affinity between the claimant-children and McCutchan, Jr. Their tie with McCutchan, Jr. was through their father who was the brother of McCutchan, Jr.'s mother. As we have seen, the children were related to McCutchan, Jr. by consanguinity by reason

the other spouse by affinity. However, *see generally* State v. Ellis, 325 Mo. 154, 162-165, 28 S.W.2d 363 (1930); Weisinger v. Van Rensselaer, 79 Misc. 2d 1023, 362 N.Y.S.2d 126, 127 (1974). *But see* Kelly v. Neely, 12 Ark. 657, 662-663 (1852); State v. Wall, 41 Fla. 463, 466-467, 26 So. 1020 (1899).

of their common ancestor. There being no marriage involved in the relationship, there was no connection by affinity.

In summary:

(1) The wife-claimant *was not* related by affinity to McCutchan, Sr.

(2) The wife-claimant *was* related by affinity to McCutchan, Jr.

(3) The children *were* related by affinity to McCutchan, Sr.

(4) The children *were not* related by affinity to McCutchan, Jr.

V

As for the claim of Mrs. Remson, the exception provision of § 5 (b) was not applicable in the determination of her eligibility for an award with respect to McCutchan, Sr. because she was not related to him by either consanguinity or affinity. The provision came into play in the determination of her eligibility for an award with respect to McCutchan, Jr. because she was related to him by affinity.

As for the claim of the children, the exception provision of § 5 (b) came into play in the determination of their eligibility for an award with respect to both McCutchan, Sr. and McCutchan, Jr. because they were related to McCutchan, Sr. by affinity (even though not by consanguinity) and to McCutchan, Jr. by consanguinity (even though not by affinity).

Our inquiry now turns to the degree of the relationships, since a relationship within the third degree of either consanguinity or affinity precludes eligibility for an award. There are two methods of computing degree of relationship. Under the common or canon law, the number of generations is counted from the common ancestor down to the farthest of the two descendants whose degree of relationship is to be ascertained. Under the civil law the count ascends by generations from either of the two relatives to the common ancestor and thence down the collateral line to the other. The legislature has described the method of the civil law as

"beginning with either of the persons in question, ascending to the common ancestor, and then descending to the other person. One degree shall be counted for each step both ascending and descending." Code (1974) Estates and Trusts Article § 1-203. The reckoning under the civil law would be just double that under the common law, as applied to relatives removed an equal number of generations from the common ancestor. *Thomas v. Marriott,* 154 Md. 107, 108-109, 140 A. 91 (1928); *State v. Thomas,* 351 Mo. 804, 810, 174 S.W.2d 337 (1943). The question is which method of reckoning is to be used in ascertaining the degree of relationship under §§ 5 (b) and 2 (d) (1) of the Act.[12]

12. Maryland has not settled upon one method of reckoning degrees of relationship which is applicable in all circumstances. In the field of estates and trusts the Legislature adopted the civil law method which was proposed by the Governor's Commission to Review and Revise the Testamentary Law of Maryland. Code (1957, 1969 Repl. Vol.) Art. 93, § 1-203, now Code (1974) Estates and Trusts Article § 1-203. The Revisory Commission proposed the civil law method with the comment that "the computation of degrees of relationship in Maryland has been a matter of some confusion." It suggested: "Explicit provisions should be made in the Statute." It provided for the uniform use of the civil law method "which is simpler and measures differences more precisely." Comment to § 1-203, Art. 93, Code (1957, 1969 Repl. Vol.) and Code (1974) Estates and Trusts Article. *See* Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, published 5 December 1968.

Judges are constitutionally prohibited from sitting "in any case . . . where either of the parties may be connected with him, by affinity or consanguinity, within such degrees as now are, or may hereafter be prescribed by Law. . . ." Md. Const. art. IV, § 7. Maryland Rule 1231, Canon XIII declares: "A judge should not act in a controversy in which a near relative is a party, witness or lawyer. . . ." Rule 1231, Rule of Judicial Ethics 2 forbids a judge from exercising his duties "with respect to any matter in which a near relative by blood or marriage is a party, has an interest, or appears as a lawyer." It defines, "[f]or the purpose of this rule," near relative to mean "connection by consanguinity or affinity within the third degree, counting down from a common ancestor to the more remote." It, thus, adopts the common law rule as applicable to the disqualification of judges. The same prohibition applies to Masters, Examiners, Auditors, Referees and District Court Commissioners. Maryland Rule 1232, Standard XII and Rule of Conduct 2.

Code (1957, 1976 Repl. Vol.) Art. 27, § 390 makes it a crime for any person to marry with any person "within the three degrees of direct lineal consanguinity, or within the first degree of collateral consanguinity. . . ." Under § 391 of Art. 27 it is a crime "[i]f any person shall marry with any person related within any other of the degrees of kindred or affinity prohibited by the laws of this State. . . ."

Code (1957, 1972 Repl. Vol.) Art. 62, § 1 renders void a marriage "within any of the degrees of kindred or affinity expressed" in a table set out in § 2. That table lists specifically the relations a man shall not marry and a woman shall not marry, embracing both lineal and collateral relations, those by consanguinity, as well as affinity, without regard to the degree of consanguinity or affinity. *Harrison v. State,* 22 Md. 469, 490 (1864).

The Act is silent as to whether the civil law method or the common law method is to be used in ascertaining the degree of relationship in regard to eligibility for an award. Both methods are recognized in Maryland with respect to other matters. As we have indicated, note 12, *supra,* by statute, the civil law method is prescribed to be applied in construing all provisions of the estates of decedents law and the terms of a will, and, by the rules of this Court, the common law method is to be used with respect to the disqualification of a judge and of certain judicial appointees. Even though the definition of "family" given in § 2 (d) is unambiguous, so that there is no need to look elsewhere in interpreting its meaning, *Gossard,* 279 Md. at 312, the method of computing whether the persons concerned are related within the third degree of consanguinity or affinity is left hanging, so that we must look elsewhere to determine which method is to be used. The legislature expressly declared its policy and legislative intent, § 1, and we discussed that policy and intent and the historical and factual background of the Act in *Gould,* 273 Md. at 495-498. There is no need to repeat that discussion here beyond noting that the legislature, conceding an inability to ameliorate to any degree the threat of violent crime, undertook "to assume the consequences of such crime as a public burden, on the ground of 'moral responsibility,'" but with the recognition that it "was embarking on uncharted waters in a noble social experiment without any real background data of experience." *Id.* at 498. We observed:

> "The recent nature of this type of legislation, the uncertain estimate of the volume of claims to be made under the Act, and the incalculable amount of the funds required to be appropriated for its administration confronted our lawmakers when they adopted this 'welfare-theory' of compensation. . . . The statutory scheme for eligibility, the prerequisites for awards and the computation of benefits were all novel. Since the funds to be disbursed were public there can be sensed a

legislative hesitancy on disbursement without some restraint." [13] *Id.* at 498.

One of the restraints was the exceptions to eligibility for an award spelled out in § 5 (b).[14] Nevertheless, the Act was remedial in nature, *Gould,* 273 Md. at 511. "[S]tatutes relating to remedies and procedure as a general rule are to be liberally construed with a view toward the effective administration of justice. . . ." *Id.* at 494.

This history and nature of the Act and the legislature's declared policy and intent in enacting it, point clearly to the civil law method vis-à-vis the common law method in reckoning degrees of relationship between a claimant and a perpetrator of the crime. As we have noted, the degrees under the civil law would be double those under the common law, as applied to relatives removed an equal number of generations from the common ancestor. In no circumstances would reckoning under the method of the civil law result in a lesser number of degrees than reckoning under the common law. Thus, a claimant who would be ineligible for an award because he was within the third degree of consanguinity or affinity under the common law method may be eligible for an award under the civil law method as without the third degree. Even if the observation of the Governor's Commission to Review and Revise the Testamentary Law of Maryland that "the civil-law method . . . is simpler and measures differences more precisely" is not accepted at face value, we think that the legislature intended that the civil law method be applied in regard to eligibility for an award. We hold that in ascertaining under § 2 (d) (1) whether a claimant is related to a perpetrator of the crime within the third degree of consanguinity or affinity, the civil law method of reckoning shall be used.

---

13. Although enacted in 1968, funds to support the Criminal Injuries Compensation Board were not appropriated until 1969.

14. Another restraint imposed was the limitation of judicial review. § 10 (a). We dealt with that in Criminal Inj. Comp. Bd. v. Gould, 273 Md. 486, 331 A. 2d 55 (1975). Acts 1975, ch. 204, Code (1957, 1973 Repl. Vol., 1977 Cum. Supp.) Art. 26A, § 10 (c), amended the Act to permit any claimant aggrieved by a final decision of the Board to appeal under the Administrative Procedure Act.

## VI

We have determined the relationships which existed between the claimants and the perpetrators of the crime:

    (1)  The wife-claimant was related to McCutchan, Jr. by affinity.

    (2)  The children-claimants were related to McCutchan, Jr. by consanguinity.

    (3)  The children-claimants were related to McCutchan, Sr. by affinity.

These were the only relationships by consanguinity or affinity with respect to the parties and, therefore, the only relationships which were possible bars to eligibility for an award. There were no other relationships which would result in the ineligibility of either the wife-claimant or the children-claimants. The question as to each of the relationships is whether it is within the third degree under the civil law method of reckoning.

### (1)

The doctrine of affinity grew out of the common law axiom, derived from canonical law, that husband and wife become by marriage one person.[15] The axiom of the common law that husband and wife are in legal contemplation but one person is the lifeblood of the doctrine of affinity; without that concept, the doctrine cannot exist. This is so because of the overwhelming view that, by the marriage, one party thereto holds by affinity the same relation to the kindred of the other, that the latter holds by consanguinity. In other words, the husband has the same relation, by affinity, to his wife's blood

---

15. "[T]he abstract idea of 'affinity' appears to have originated with the medieval church. The canon law, which was in this respect derived from the Jewish law, prohibited marriage within certain degrees of consanguinity. See Coke's Institutes, Part II, p. 683. Further, it was an axiom of this law that the sexual union makes man and woman one flesh, and from this it was thought logically to follow that one's relatives by affinity occupied the same status as one's blood relations. See *Butler v. Gastrill,* Gilb. ch. 156, 25 Eng. Rep. R. 110; Blackstone, Commentaries (Lewis Edition), Book 1, ch. 15, p. 435 (Christian's Note)." In Re Bordeaux' Estate, 37 Wash. 2d 561, 565, 225 P. 2d 433 (1950). *See* State v. Hooper, 140 Kan. 481, 501, 37 P. 2d 52 (1934); Bliss ·v. Tyler, 149 Mich. 601, 113 N. W. 317 (1907); 41 Am. Jur. 2d *Husband and Wife* § 2 (1968).

relatives as she has to them by consanguinity and vice versa.[16] Thus it is, that "[w]here relationship by affinity is held to be applicable, degrees of relationship are computed ... to the spouse of the subject, the bridging marriage not counting as one step. . . ." *Wilson v. Greenacres Country Club,* 41 N.J. Super. 530, 535, 125 A. 2d 539 (1956). *Chinn v. State,* 47 Ohio 575, 579, 26 N. E. 986 (1890) put it this way: "[T]he rule of computing [affinity's] degrees is, that the relations of the husband stand in the same degree of affinity to the wife, in which they are related to the husband by consanguinity; which rule holds also, *e converso,* in the case of the wife's relations." *State v. Wall,* 41 Fla. 463, 466, 26 So. 1020 (1899) said it concisely: " '[T]he blood relations of each [of the husband and wife] are held as related by affinity in the same degree to the one spouse as by consanguinity to the other. . . .' " (Quoting *Hume v. Bank,* 78 Tenn. 1, 3 (1882)).

The short of it is that the doctrine of affinity, by its definition and terms, requires that husband and wife be considered as one person. Without that axiom there can be no relationship by affinity. The blood relations of each spouse cannot be related in the same degree to the one spouse as by consanguinity to the other unless husband and wife are one person so as to exclude the lateral or bridging step between them as a degree. Therefore, no matter to what extent the unity of husband and wife has been otherwise abrogated and the modern doctrine of the equality of husband and wife

---

16. *See,* for example, Little v. State, 339 So. 2d 1071, 1072 (Ala. Crim. App. 1976); Kelly v. Neely, 12 Ark. 657, 659 (1852); Robinson v. Southern Pac. Co., 105 Cal. 526, 557, 38 P. 94, 100-101 (1894), *aff'd on rehearing,* 38 P. 722 (1895); Layton v. Jacobs, 21 Del. 71, 76, 62 A. 691, 692-693 (1904); State v. Wall, 41 Fla. 463, 466-468, 26 So. 1020, 1021-1022 (1899); Eaton v. Grindle, 236 Ga. 324, 325, 223 S.E.2d 670, 671 (1976); Clawson v. Ellis, 286 Ill. 81, 83, 121 N. E. 242, 243 (1918); Tegarden v. Phillips, 14 Ind. App. 27, 33-34, 42 N. E. 549, 551 (1895); State v. Hooper, 140 Kan. 481, 501, 37 P. 2d 52, 64 (1934); Chase v. Jennings, 38 Me. 44, 45 (1854); Spear v. Robinson, 29 Me. 531, 545 (1849); Bliss v. Tyler, 149 Mich. 601, 608, 113 N. W. 317, 319 (1907); State ex inf. Roberts v. Buckley, 533 S.W.2d 551, 554 (Mo. Sup. Ct. 1976); Wilson v. Greenacres Country Club, 41 N.J. Super. 530, 535, 125 A. 2d 539, 541 (1956); Paddock v. Wells, 2 Barb. Ch. 331, 333 (1847); Higbe v. Leonard, 1 Denio 186, 187 (1845); Kest v. State, 146 N.E.2d 755, 757 (Ohio P. Ct. 1957), *aff'd,* 169 Ohio 317, 159 N.E.2d 449 (1959); Chinn v. State, 47 Ohio 575, 579, 26 N. E. 986, 987 (1890); State v. Byrd, 72 S. C. 104, 105, 51 S. E. 542 (1905); Hume v. Bank, 78 Tenn. 1, 3 (1882); In Re Bordeaux' Estate, 37 Wash. 2d 561, 565, 225 P. 2d 433, 436 (1950).

installed, regardless of the enactment of Married Women's Acts and other legislation under which each of the husband and wife are deemed to be a separate legal personality insofar as disabilities of the wife are abolished, despite however else husband and wife are considered to be separate persons, the unity of the spouses is not obliterated with respect to the doctrine of affinity. When relationship by affinity is recognized, as it is in Maryland, unity of the spouses remains as a necessary element of affinity.

Reckoning by the method of the civil law, the husband of the wife-claimant is related to McCutchan, Jr. in the third degree of consanguinity. The 1st degree is the step ascending from the husband to his mother, the common ancestor. The 2nd degree is the step descending from the mother to her daughter, the sister of the husband of the wife-claimant. The 3rd degree is the step descending from the daughter to McCutchan, Jr., the daughter's son. As the wife-claimant is related by affinity to McCutchan, Jr. in the same degree as her husband is related to him by consanguinity, she is related to McCutchan, Jr. in the third degree of affinity. This places her within the degree of relationship that makes her ineligible for an award with respect to McCutchan, Jr.

The wife-claimant is in an unusual position with respect to eligibility for an award. One crime was committed by two persons. She is eligible for an award as to one of the criminal agents, McCutchan, Sr., and is ineligible for an award as to the other criminal agent, McCutchan, Jr. The question is whether her ineligibility as to one of the criminal agents prohibits an award to her despite her eligibility as to the other criminal agent.

We indicated, *supra,* the remedial nature of the Act and noted the general rule that such statutes are to be liberally construed with a view toward the effective administration of justice. But they are not to be given such a construction as will defeat or frustrate the legislative intention. *Gould,* 273 Md. at 494 (citing *Commercial Credit Corp. v. Schuck,* 151 Md. 367, 134 A. 2d 349 (1926)).

The Act plainly and clearly designates those persons who shall be eligible for awards, § 5 (a) (1) - (6), and those persons

who shall be ineligible for awards, § 5 (b). We quote again § 5 (b):

> "*A person* who is criminally responsible for *the crime* upon which a claim is based *or* an accomplice of *such person* or a member of the family of *such persons* shall not be eligible to receive an award with respect to such claim." (Emphasis added).

There is no ambiguity or obscurity in the language of this section, so there is no need for us to look elsewhere to ascertain the intent of the legislature. *Maryland Auto Ins. Fund v. Stith,* 277 Md. 595, 597, 356 A. 2d 272 (1976). As the statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, we are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning. *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 66, 327 A. 2d 483 (1974). The legislative intent is clear from the language of the statute:

A claimant is not eligible to receive an award when:

(1) the claimant is criminally responsible for *the crime* upon which the claim is based; OR
(2) the claimant is an accomplice of *a person* criminally responsible for *the crime;* OR
(3) the claimant is a member of the family of *a person* criminally responsible for *the crime;* OR
(4) the claimant is a member of the family of the accomplice of *a person* criminally responsible for *the crime.*

The wife-claimant here was prima facie eligible to receive an award as the surviving spouse of a victim of a felonious homicide. § 5 (a) (2). It is not disputed that McCutchan, Sr. and McCutchan, Jr. united in the commission of the crime. Each, independent of the other, was criminally responsible for *the crime.* As principal offenders, each was the accomplice of the other. *Strong v. State,* 261 Md. 371, 377, 275 A. 2d 491 (1971), *vacated in part,* 408 U. S. 939 (1972); *Matthews v. State,* 237 Md. 384, 388, 206 A. 2d 714 (1965); *Agresti v. State,*

2 Md. App. 278, 280-281, 234 A. 2d 284 (1967). We have determined that the wife-claimant was a member of the family, as defined, of McCutchan, Jr. Whether McCutchan, Jr. be considered as a principal in the crime or as an accomplice of McCutchan, Sr. is of no significance. The wife-claimant was either a member of the family of *a person* who was criminally responsible for *the crime* upon which her claim was based, or a member of the family of *a person* who was an accomplice of *a person* who was criminally responsible for *the crime.* In either circumstance, the clear statutory mandate obliterated her prima facie eligibility, and rendered her ineligible to receive an award. The fact that she was not related to *another person* who was also criminally responsible for the *same crime* did not preserve her eligibility. We hold that under § 5 (b) the wife-claimant was prohibited from receiving an award with respect to her claim.

### (2)

We have determined that the children-claimants were related to McCutchan, Jr. by consanguinity. Reckoning by the civil law method, they are related to McCutchan, Jr. in the fourth degree of consanguinity. The 1st degree is the step ascending from them to their father. The 2nd degree is the step ascending from the father to his mother, their grandmother and the common ancestor. The 3rd degree is the step descending from their grandmother to the grandmother's daughter, McCutchan, Jr.'s mother. The 4th degree is the step descending from McCutchan, Jr.'s mother to McCutchan, Jr. As the relationship is not within the third degree, the children-claimants are eligible for an award with respect to McCutchan, Jr.

### (3)

We have determined that the children-claimants were related to McCutchan, Sr. by affinity. Reckoning by the civil law method, they are related to the wife of McCutchan, Sr. in the third degree of consanguinity. The 1st degree is the step ascending from them to their father. The 2nd degree is the step ascending from the father to his mother, their

grandmother and the common ancestor. The 3rd degree is the step descending from their grandmother to the grandmother's daughter, McCutchan, Sr.'s wife. The lateral, bridging step between the wife and McCutchan, Sr. is not counted as a degree. As the children-claimants are related by affinity to McCutchan, Sr. in the same degree as his wife is related to them by consanguinity, they are related to McCutchan, Sr. in the third degree of affinity. This places them within the degree of relationship that makes them ineligible for an award with respect to McCutchan, Sr.

The children-claimants were prima facie eligible to receive an award as the surviving children of a victim of a felonious homicide. § 5 (a) (2). Their claim was based upon the same crime as that upon which the claim of the wife-claimant, their mother, was based. And they are in the same unusual situation as was the wife-claimant. They are eligible for an award as to one of the criminal agents, in their case McCutchan, Jr., and are ineligible for an award as to the other criminal agent, in their case, McCutchan, Sr. They were not entitled to an award for the same reasons the wife-claimant was not entitled to an award. We hold that under § 5 (b) the children-claimants were prohibited from receiving an award with respect to their claim.

## SUMMARY OF DECISION

In the light of our construction of the Act and determinations of the law relating thereto, we have held:

A. The Board found that a crime within the contemplation of the Act had been committed and that McCutchan, Sr. and McCutchan, Jr., but only those two persons, were criminally responsible for that crime. The Board's findings stand valid.

B. With respect to the relationships of the claimants and the criminal agents:

(a) *as to McCutchan, Sr.:*

   (1) *wife-claimant:*

      (i) not related by consanguinity;

      (ii) not related by affinity;

         (2) *children-claimants:*
- (i) not related by consanguinity;
- (ii) related in the third degree of affinity;

    (b) *as to McCutchan, Jr.:*
- (1) *wife-claimant:*
  - (i) not related by consanguinity;
  - (ii) related in the third degree of affinity;
- (2) *children-claimants:*
  - (i) related in the fourth degree of consanguinity;
  - (ii) not related by affinity.

C. With respect to eligibility for an award:
- (a) wife-claimant not eligible for an award by reason of her relationship to McCutchan, Jr. within the third degree of affinity;
- (b) children-claimants not eligible for an award by reason of their relationship to McCutchan, Sr. within the third degree of affinity.

We reverse the judgment of the Circuit Court for Prince George's County, but assess the costs to the appellant. Maryland Rule 882 a and f.[17]

*Judgment reversed; costs to be paid by appellant.*

---

17. We mentioned earlier that the lower court said it relied "heavily" on the opinion of Liss, J. in Alimo v. Criminal Injuries Compensation Board of Maryland, Superior Court of Baltimore City, 1973/824/138213. The case did not reach the appellate courts of this State on the merits. We note, however, that within the limitation of its facts, the decision in Alimo is completely in accord with our decision in this case. In Alimo, as here, the victim's death was caused by a felonious homicide committed by his sister's husband, and the victim's surviving spouse applied for an award. The award was denied by the Board under the provisions of § 5 (b). The lower court reversed the Board's order upon a determination that the claimant and the criminal agent were not related within the contemplation of the Act because, as we have also found the rule to be, an affine of one spouse is not related to an affine of the other spouse.

Here, however, unlike Alimo, there was more than one person criminally responsible for the death of the victim and more than one claimant for an

## APPENDIX I

Statutes providing compensation for victims of crimes:

Alaska Stat. § 18.67.010 *et seq.* (1962).
Cal. Gov't Code §§ 13959-13974 (West Cum. Supp. 1977).
Del. Code Ann. tit. 11 § 9001 *et seq.* (Supp. 1977).
1977 Fla. Laws, ch. 77-452.
Ga. Code Ann. § 47-518 *et seq.* (1974).
Hawaii Rev. Stat. §§ 351-31—351-52 (1976).
Ill. Ann. Stat. ch. 70, § 71-84 (Smith-Hurd Cum. Supp. 1977).
Ky. Rev. Stat. Ann. § 346.010-346.180 (Baldwin Cum. Supp. 1977).
Mass. Gen. Laws Ann. ch. 258A § 1 *et seq.* (Cum. Supp. 1977-1978).
Mich. Stat. Ann. § 3.372 (1) *et seq.* (1977).
Minn. Stat. Ann. § 299 B.01 *et seq.* (West Cum. Supp. 1978).
Montana Rev. Codes Ann. § 71-2601 *et seq.* (Cum. Supp. 1977).
Nev. Rev. Stat. § 217.010 *et seq.* (1973).
N. J. Stat. Ann. § 52.4B-1 *et seq.* (West Cum. Supp. 1977-1978).
N. Y. Exec. Law § 620 *et seq.* (McKinney 1972).
N. D. Cent. Code § 65-13-01 *et seq.* (Supp. 1977).
Ohio Rev. Code Ann. § 2743.51 *et seq.* (Page Supp. 1976).
Ore. Rev. Stat. § 147.005 *et seq.* (Supp. 1977).
Pa. Stat. Ann. tit. 71, § 180-7 *et seq.* (Purdon Cum. Supp. 1977-1978).
R. I. Gen. Laws § 12-25-1 *et seq.* (Cum. Supp. 1977).
Tenn. Code Ann. § 23-3501 *et seq.* (Cum. Supp. 1976).
Va. Code § 19.2-368.1 *et seq.* (Cum. Supp. 1977).
Wash. Rev. Code Ann. § 7.68-010 *et seq.* (Supp. 1976).
Wisc. Stat. Ann. § 949.01 *et seq.* (West Cum. Supp. 1977-1978).

The Louisiana statute providing compensation for victims of crime, La. Rev. Stat. tit. 46, ch. 21, §§ 1801-1821 (Supp. 1972), was repealed by 1976 La. Acts, No. 535.

---

award. Where the lower court in this case went astray was in not pursuing fully the effects of there being another person criminally responsible for the victim's death, and there being a claim by the victim's surviving children.

## APPENDIX II

Statutes which make a person related to the perpetrator of the crime within the third degree of consanguinity or affinity ineligible to receive compensation for injuries resulting from the crime:

1977 Fla. Laws, ch. 77-452, § 897.04 (2).

Ky. Rev. Stat. Ann. §§ 346.020 (4) (a), 346.050 (2) (Baldwin Cum. Supp. 1977).

N. J. Stat. Ann. §§ 52:4B-2, 52:4B-18a (West Cum. Supp. 1977-1978).

N. Y. Exec. Law §§ 621 (4), 624 (2) (McKinney 1972).

Pa. Stat. Ann. tit. 71, §§ 180-7, 180-7.3 (b) (Purdon Cum. Supp. 1977-1978).

Tenn. Code Ann. §§ 23-3502 (e) (1), (2), 23-3505 (c) (Cum. Supp. 1976).

Va. Code §§ 19.2-368.2 (4), 19.2-368.4 (b) (Cum. Supp. 1977).

## APPENDIX III

Statutes which make certain enumerated relatives ineligible to receive compensation for injuries resulting from a crime:

Alaska Stat. §§ 18.67.130 (b) (1), 18.67.180 (4) (1962).

Ga. Code Ann. § 47-524 (b) (1) (1974).

Mass. Gen. Laws Ann. ch. 258A §§ 1, 3 (Cum. Supp. 1977-1978).

Minn. Stat. Ann. § 299B .03 (2) (c) (West Cum. Supp. 1978).

Montana Rev. Codes Ann. § 71-2602 (3) (Cum. Supp. 1977).

Nev. Rev. Stat. §§ 217.060, 217.220 (1) (a) (1973).

N. D. Cent. Code § 65-13-06 (3) (Supp. 1977).

Ohio Rev. Code Ann. § 2743.60 (B) (Page Supp. 1976).

Ore. Rev. Stat. §§ 147.005 (9), 147.015 (2).

R. I. Gen. Laws §§ 12-25-2 (5), 12-25-6 (c) (Cum. Supp. 1977).

Wash. Rev. Code Ann. § 7.68.070 (3) (c) (Supp. 1976).

Wisc. Stat. Ann. § 949.08 (2) (a) (West Cum. Supp. 1977-1978).

The Illinois statute simply says that "[a] person is entitled to compensation under this Act if . . . the victim and his assailant were not related, and sharing the same

household. . . ." Ill. Ann. Stat. ch. 70, § 73 (e) (Smith-Hurd Cum. Supp. 1977).

The Michigan statute states that "[a] person is not eligible to receive an award if the person is . . . [a] person who resides in the same household with the person who is criminally responsible for the crime. . . ." As defined, " 'resides' does not include the situation of a domestic employee, unrelated by blood or marriage to the employer, who is living in the household of the employer." Mich. Stat. Ann. § 3.372 (4) (2) (c) (1977).